## WOOTEN v. STATE.

### (*Jackson.* June 10, 1897.)

1. CHARGE OF COURT. *Erroneous in murder case.*

   An instruction to the jury in a murder case, that if the death was hastened by the defendant's act he would be guilty of some degree of felonious homicide, although deceased might have died from other causes, or would not have died from the blow if no other cause had co-operated with it, is erroneous without the qualification that defendant's act must have been unlawful, and not justifiable. (*Post, pp. 193, 194.*)

2. SAME. *Erroneous refusal of requests in murder case.*

   It is error for the Court to refuse to charge defendant's requests in a murder case, not covered by the original charge and supported by some evidence, to the effect that if the clot of blood formed on the brain of the deceased was produced by the use of stimulants, and that this, and not the unlawful act of the defendant, caused his death, or if the jury have a reasonable doubt as to how this is, they should acquit; and that if the deceased, of his own accord, and not by the wrongful or unlawful act of the defendant, overbalanced himself and staggered and fell to the pavement, and his death was thereby caused, or if the jury have a reasonable doubt in this respect, they should acquit. (*Post, pp. 194, 195.*)

   Case cited and approved: Souey v. State, 13 Lea, 472, 480.

3. CRIMINAL PRACTICE. *Challenge of juror.*

   The Court's error in requiring a defendant in a criminal case to challenge a disqualified juror peremptorily is not available in this Court for reversal, unless the record discloses that defendant exhausted all his peremptory challenges and was afterwards forced, over objection, to take an unacceptable juror. (*Post, pp. 195–199.*)

   Cases cited: McGowan v. State, 9 Yer., 193; Carroll v. State, 3 Hum., 317; Henry v. State, 4 Hum., 270; Preswood v. State, 3 Heis., 468; Griffee v. State, 1 Lea, 44; Holcomb v. State, 8 Lea, 420; Taylor v. State, 11 Lea, 721; Hannum v. State, 90 Tenn.,

Wooten *v.* State.

649; Moses *v.* State. 10 Hum., 456; Moses *v.* State, 11 Hum., 233; Alfred *v.* State, 2 Swan, 581; Major *v.* State, 4 Sneed, 600; Eason *v.* State, 6 Bax., 468; Woods *v.* State, *ante,* p. 182; Conatser *v.* State, 12 Lea, 438; 116 U. S., 642; 120 U. S., 71, 430.

FROM SHELBY.

Appeal in error from Criminal Court of Shelby County. L. P. COOPER, J.

PETERS & ROBERTS for Wooten.

Attorney-general PICKLE for State.

CALDWELL, J. Cap Wooten was indicted and tried in the Criminal Court of Shelby County for the murder of Gustave Blanz; was convicted of voluntary manslaughter, and sentenced to two years' imprisonment in the penitentiary. Motions in arrest of judgment and for a new trial were overruled, and he appealed in error.

Blanz and Wooten, respectively, were supporters of rival candidates for Constable, at a primary election held in the city of Memphis on the fifteenth day of June, 1896. Late in the afternoon of that day they met near the polling place, on Main Street, and had some short and angry words. Blanz was old and feeble, Wooten young and vigorous. Soon after their altercation at the polls, and not far from the same place, they met again, and, with or without further

intercourse between them, Wooten delivered a blow
with his fist at the face of Blanz, who fell to the
ground, his head striking the pavement with great
force, and never regained consciousness.   Bystanders
soon carried Blanz into a saloon near by, and, after
a short time, he was taken thence by police offi-
cers, in a patrol wagon, to the police station, where
he remained, unattended and prostrate upon the floor,
for hours.   The notion that he was only "dead
drunk" seems to have prevailed with the city offi-
cials observing him, and, for that reason, no doubt,
his case did not receive medical attention until after
the middle of the night.   About one o'clock in the
morning his condition was discovered by physicians
to be very critical, and, after careful examination,
the concensus of opinion, among those in attendance,
was that the patient had a blood clot on the brain,
and that a surgical operation was advisable and nec-
essary.   Thereupon, the "deeply unconscious" man
was removed from the stationhouse floor, where he
had lain unattended for six or seven hours, to the
operating room of the St. Joseph Hospital, and there
his skull was trephined, and two circular buttons of
bone were cut out, near together and under the ex-
ternal wound on the side of the head.   Then the
bone intervening between the two holes made in the
skull by the sawing and removal of the buttons was
cut away, and a final examination was made.   The
exploration was unsuccessful, in that it failed to dis-
close a blood clot on the brain, and gave the patient

no relief. Blanz died about noon of the day of the operation, never having recovered consciousness from the time of his fall upon the pavement—some eighteen hours before his death.

An autopsy was had, and the whole top of the skull taken off. Beneath the dura mater, over and under the frontal lobe of the brain, and diametrically opposite the point from which the buttons of bone had been taken, was discovered an extensive blood clot. Thus the diagnosis of attending physicians seems to be amply verified. Experts upon the subject say that a blood clot upon the brain, caused by a blow on the head, is to be expected first under the external injury, and, if not found there, then it may be looked for, with certainty of discovery, in a direct line on the opposite side, and at a point furthest from the outward injury. That the sudden and continued unconsciousness of Blanz, and his death, resulted from a clot of blood on his brain is not to be doubted from the record. Responsibility for the blood clot, however, was a matter of contention and debate at the trial in the Court below.

The theory of the State was that Wooten, without provocation, and with malice, premeditation, and deliberation, knocked Blanz down, and caused his head to strike the pavement so violently as to rupture a blood vessel, and thereby produce the blood clot which resulted in his death. The defendant, on the other hand, advanced several alternate propositions, upon any and all of which he claimed an acquittal.

His contention was, that he struck at the deceased upon adequate provocation and in his proper self-defense; that the deceased, without fault of defendant, overbalanced himself and fell upon the pavement; that the deceased was an habitual drunkard, and, by his excessive intemperance, himself caused the clot of blood to form on his brain about the time of his falling upon the pavement; that the deceased was so recklessly thrown from the patrol wagon, against one of its wheels, and upon the floor of the stationhouse, as to produce the blood clot; and, finally, that death may have resulted from the trephining operation as an independant cause.

The State introduced several witnesses, whose testimony tended to establish its theory of the case; and the defendant had some testimony in favor of each of his propositions and contentions.

The trial Judge correctly defined the different grades of unlawful homicide and self-defense in his charge to the jury, and made some appropriate hypothetical and illustrative applications thereof, after which he gave other instructions that are objected to as erroneous and prejudicial to the rights of the defendant. One of these instructions is as follows: "The Court further charges you that if, from the evidence, you should come to the conclusion that the state of health and physical condition of the deceased at the time was such that it was reasonably probable that death might ensue from such condition, yet if you believe that the time of his death was hastened by

the action of the defendant in the premises, then, in that event, the defendant would be guilty of some one of the degrees of felonious homicide above explained to you, and it will be your duty so to find.    And this is true, though the deceased might have died from other causes, or would not have died from this one had no other one operated with it, provided the blow really contributed to, either me-diately or immediately, or has hastened the death of the deceased.'' This is not a sound legal proposi-tion.    If, by his action, the defendant, in fact, has-tened the death of deceased, he was, obviously, guilty of some degree of felonious homicide, pro-vided his action was unlawful; but not so if he acted lawfully. The instruction does not contain this proviso, and, for that reason, is fatally defective and erroneous. If the defendant's action was law-ful, 'as upon adequate provocation and reasonable apprehension of death or great bodily harm, he was guilty of no offense, though what he did may have caused or hastened the death of the deceased.

Furthermore, the trial Judge was in error when he refused to give the jury special instruction, as follows:    '' If you believe from the proof that a clot of blood, formed on the brain of the deceased, [was] produced by the use of stimulants and intem-perance, and that this, and not the unlawful act of the defendant, caused his death, or if you have a reasonable doubt as to how this is, you should acquit the defendant;'' and, also, when he refused to give an-

other special instruction, in these words: "If you find from the proof that the deceased, when on Main Street, of his own accord, and not by the wrongful or unlawful act of the defendant, overbalanced himself, and staggered and fell to the pavement, and that his death was thereby caused, or if you have a reasonable doubt as to how this was, you should acquit the defendant." These instructions should have been given to the jury. They contained sound propositions of law, not embraced in the charge delivered, and were applicable to certain evidence having a tendency toward the establishment of the respective propositions of fact hypothetically stated therein. *Souey* v. *State*, 13 Lea, 472, 480.

Certain persons, summoned as jurors, answered, on preliminary examination, that they had read newspaper accounts of the homicide, and from those accounts had formed an opinion touching the guilt or innocence of the defendant. By reason of that opinion those persons were, by the defendant, challenged for cause; but the court ruled that they were competent, and, thereupon, the defendant challenged them peremptorily, and they were excused from service. Before the jury was completed, and while eleven jurors were being selected, the defendant exhausted all of his peremptory challenges. Afterwards, J. B. Dunning was "accepted as juror by State and defendant," and became the twelfth member of the jury, without objection or challenge. The defendant now insists that the proposed jurors

who had formed an opinion, were disqualified, and that the trial Judge was in error when he ruled that they were competent, and thereby compelled him either to accept them or spend peremptory challenges to avoid them. The State replies that the defendant cannot raise that question on this record, because he did not, after the exhaustion of all his peremptory challenges, also challenge, or offer . to challenge, Dunning, but "accepted" him without objection.

It has long been settled that a defendant in a criminal prosecution must exhaust all of his peremptory challenges at the trial below, as was done in this case, before he can, in this Court, question the ruling of the trial Judge as to the competency of persons presented as jurors (*McGowan* v. *State*, 9 Yer., 193; *Carroll* v. *State*, 3 Hum., 317; *Henry* v. *State*, 4 Hum., 270; *Preswood* v. *State*, 3 Heis., 468; *Griffee* v. *State*, 1 Lea, 44; *Holcomb* v. *State*, 8 Lea, 420; *Taylor* v. *State*, 11 Lea, 721; *Hannum* v. *State*, 90 Tenn., 649); but no case is recalled in which it has been distinctly decided whether or not the defendant, after exhausting his peremptory challenges, must go further and make, or offer to make, another challenge, to entitle him to a review of that ruling. Some of the opinions in which the competency of jurors has been considered by this Court, recite that the defendant exhausted all of his peremptory challenges, without saying whether or not he thereafter made, or offered to make, another

Wooten *v.* State.

challenge. Of this class are *Moses* v. *State*, 10 Hum., 456; *Moses* v. *State*, 11 Hum., 233; *Alfred* v. *State*, 2 Swan, 581; *Major* v. *State*, 4 Sneed, 600. Other opinions wherein the question of competency has been adjudged, mention the exhaustion of peremptory challenges, and also the additional fact that a further challenge was made. *Eason* v. *State*, 6 Bax., 468; *Conatser* v. *State*, 12 Lea, 438; *Woods* v. *State*, *ante*, p. 182. The latter fact was given the prominence of an essential in the last case, though it was not in terms adjudged to be so. In Holcomb's case, the Court said: "It is well settled that, unless the prisoner is forced to accept other jurors, after exhausting his challenges, the question as to the competency of jurors challenged cannot be made." 8 Lea, 419, 420. This has been understood to mean that the defendant must make the subsequent challenge, or offer to do so; and we deem this the proper rule.

The true object of challenges, peremptory and for cause, is to enable the parties to avoid disqualified persons and secure an impartial jury. When this end is accomplished, there can be no just ground of complaint against the ruling of the Court as to the competency of jurors. In the present case, all of those alleged to be incompetent were rejected upon peremptory challenges, and, therefore, did not participate in the trial; and no objection, peremptory or for cause, was made to any juror selected. Dunning, the only one selected after the defendant had

exhausted his peremptory challenges, was "accepted" by' both sides, without objection from either. No one of the jurors, actually trying the case, appears to have been objectionable or disqualified, consequently, all of them are presumed to have been unobjectionable and qualified; this being so, it would avail the defendant nothing to · show, if he could, that some of those rejected upon his peremptory challenges were incompetent, and, for that reason, the Court would not perform the vain task of deciding the question for him. It would be otherwise, if the required use of peremptory challenges against those persons had deprived him of the attempted employment of such challenge against objectionable persons subsequently presented, and placed on the jury over his objection.

Thompson says the better view is, that, to entitle a defendant to relief against the ruling of the trial Court in relation to the competency of a proposed juror, it must appear, "not only that his peremptory challenges were exhausted, but [also] that some objectionable person took his place on the jury, who otherwise would have been excluded by a peremptory challenge." Thompson on Trials, Sec. 115.

In the case of *Northern Pacific Railroad Company* v. *Herbert*, the Supreme Court of the United States refused to consider the competency of a challenged juror, because, whether he was competent or incompetent, the jury trying the case appeared to be 'impartial, and the complaining party was entitled to

nothing more. The Court, in deciding the point, said: "A competent and unbiased juror was selected and sworn, and the company had, therefore, a trial by an impartial jury, which was all it could demand." 116 U. S., 642. The same Court, while treating the same subject in a criminal prosecution, said: "The accused cannot complain if he is still tried by an impartial jury. He can demand nothing more. *Northern Pacific Railroad Company* v. *Herbert*, 116 U. S., 642. The right to challenge is a right to reject, not to select, a juror. If, from those who remain, an impartial jury is obtained, the constitutional right of the accused is maintained. In this case it is not even suggested that the jury by which the accused was tried was not a competent and impartial one." *Hayes* v. *Missouri*, 120 U. S., 71. This case is cited, with approval, in that of *Hopt* v. *People of Utah*, 120 U. S., 430, and they are both reaffirmed in *Ex parte Spies*, 123 U. S., 131, wherein the Court held that its consideration of the question of competency must be confined to rulings in respect of challenged jurors who actually sat at the trial; and that the constitutional right of the accused is maintained when an impartial juror is obtained in the place of one challenged peremptorily for bias, and excused. As in the Hayes case, it is not even suggested in the present case that the jury by which Wooten was tried was not competent and impartial.

Our holding is that the rulings of the trial Judge

as to the competency of the jurors peremptorily challenged by the defendant and excused from service, are not properly subject to consideration by this Court (1) because the jury actually trying the case appears to have been unobjectionable and impartial; (2) because the defendant "accepted" without objection, and did not challenge, or offer to challenge, Dunning, the only juror presented after the exhaustion of his peremptory challenges, thereby showing that he was not injured by those rulings, or forced to take an objectionable person whom he could otherwise have excluded by a peremptory challenge.

Reverse the judgment for the errors pointed out in the charge and in the refusal to instruct the jury as requested, and remand for a new trial.