### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## WESTERN DIVISION.

---

## JACKSON, APRIL TERM, 1913.

---

### VAULX MAHON *v.* STATE.[*]

### (*Jackson*, April Term, 1912.)

1. **JURY.** Error in designation and appointment of special panel by trial judge, under erroneous impression as to recently enacted statute, may be waived, when.

The error of the trial judge in designating and appointing a special panel of jurors for the trial of the accused, under the erroneous impression that it was his duty to do so under a recently enacted statute, was not ground for reversal, where he invited objection from the counsel for the State and the defense, and inferentially offered to have the sheriff select and summon a panel under the law prior to such statute, if counsel would consent, but no objection was made to the designation and appointment thereof by the trial judge. (*Post, pp.* 539-542.)

Acts cited and construed: Private Acts 1911, ch. 115.

Case cited and approved: Hobbs v. State, 121 Tenn., 413.

---

[*] The opinion in this case was received too late to be reported in its proper place; and, therefore, it is reported here.—Reporter.

On the question of the disqualification of a juror in a criminal case by opinion gained from newspaper, see note in 35 L. R. A. (N. S.), 985.

Mahon .v. State.

2. SAME. Challenge to array or motion to quash panel must be in writing.

The challenge to the array or the motion to quash the panel must be in writing, and must specifically point out, with particularity, the grounds relied upon for setting the panel aside. The reason of the rule seems to be that the challenge and motion are informal pleadings, and all pleadings in courts of record must be in writing. (*Post, pp.* 542, 543.)

Cases cited and approved: People v. Brown, 48 Cal., 253; People v. Collins, 105 Cal., 504; State v. Davis, 41 Iowa, 311; State v. Knight, 43 Me., 11; People v. Doe, 1 Mich., 451; State v. Taylor, 134 Mo., 109; Cox v. People, 80 N. Y., 500; Cooley v. State, 38 Tex., 636; Perry v. State (Tex. Cr. App.), 34 S. W., 618.

3. SAME. Formation of opinion from conversation with witness, requiring proof for its removal, renders juror incompetent.

Where a talesman had talked with a witness for the State, and from his conversation with the witness formed an opinion manifestly hostile to the accused, and on his *voir dire* examination stated that he entertained the opinion at that time, but could lay it aside, and give the accused a fair and impartial trial, and try the case according to law and the evidence, if there was proof to remove the opinion, the juror was incompetent, and the trial judge erred in holding him to be competent. (*Post, pp.* 543, 544.)

4. SAME. Same. Formation of opinion from conversation with person who had talked with witnesses, requiring proof for its removal, renders juror incompetent.

Where a talesman had been told how a killing occurred, by a person who, he understood, had ascertained the facts from witnesses, and, from his information, had formed an opinion which he entertained at the time of his *voir dire* examination, and which, he said, it would take proof to remove, but testified that the opinion would not have any weight with him if the

Mahon v. State.

proof was sufficient, the juror was incompetent, and the trial judge erred in holding him to be competent. (*Post, pp.* 543, 544.)

5. CRIMINAL LAW. Error in compelling accused to accept a competent juror, objectionable to him, after exhaustion of his peremptory challenges on jurors erroneously held to be competent.

Under our statute (Acts 1911, ch. 32), providing that no verdict or judgment shall be set aside or new trial granted for any error in procedure in the cause, unless in the opinion of the appellate court, to which application is made, after an examination of the entire record, it shall affirmatively appear that the error complained of has affected the result of the trial, where the trial judge erroneously held jurors to be competent, and they were thereupon peremptorily challenged, and, by reason of the exhaustion of his peremptory challenges, the accused was compelled to accept a juror objectionable to him, but who was competent, qualified, and impartial under the law, such error was not ground for reversal. (*Post, pp.* 544-546.)

Acts cited and construed: Acts 1911, ch. 32.

Cases cited and approved: Wooten v. State, 99 Tenn., 189; Brinkley v. State, 125 Tenn., 371.

Cases cited and distinguished: Wooten v. State, 99 Tenn., 189; K. of P. v. Steele, 108 Tenn., 624.

6. SAME. Same. Statute construed to require supreme court to disregard error in compelling accused to accept competent jurors after exhaustion of peremptory challenges under erroneous holding of court, is not unconstitutional.

The statute (Acts 1911, ch. 32), providing that no verdict or judgment shall be set aside or new trial granted for error in any procedure in the cause, unless it shall affirmatively appear that the error complained of has affected the result of the trial, when construed to require the appellate court to disregard errors in holding jurors competent which necessitated the exhaustion of the peremptory challenges by the accused, and resulted in his

being compelled to accept a juror who was legally competent and qualified, but who was objectionable to the accused, and whom he would have peremptorily challenged is not unconstitutional, because, while the constitution guarantees to the accused a fair and impartial trial, which necessarily includes a trial by a fair and impartial jury, yet the constitution does not secure to him the right peremptorily to challenge proposed jurors, but this right is given only by statute, and may be taken away or regulated by statute. (*Post, pp.* 546-548.)

Acts cited and construed:   Acts 1911, ch. 32.

Constitution cited and construed:   Art. 1, secs. 8, 9, and 14; art. 6, sec. 9; art. 11, sec. 2.

Cases cited and approved:   Wooten v. State, 99 Tenn., 189; Brinkley v. State, 125 Tenn., 371.

7. **SAME.  Conviction not reversed upon evidence, unless it preponderates against verdict and in favor of innocence.**

The supreme court will not reverse a conviction, upon the evidence, unless the evidence preponderates against the verdict and in favor of the innocence of the accused; for, in the supreme court, the burden is upon the accused to show his innocence by a preponderance of the evidence. (*Post, pp.* 548, 549.)

Case cited and approved:   Cooper v. State, 123 Tenn., 37.

8. **SAME.  Same.  What evidence is disregarded or not considered on appeal from conviction.**

On appeal from a conviction in a criminal case, in determining whether the evidence preponderates against the verdict, immaterial conflicts in the testimony are not considered; discrepancies in dates and distances, which are not controlling in their materiality, are disregarded; and in many cases, the mere weight to be given to the testimony, arising out of the number of witnesses and their general reputation, is disregarded, because these questions are all deemed to have been settled by the jury and trial judge, who saw the witnesses on the stand. (*Post, p.* 549.)

Mahon v. State.

9. **MURDER IN SECOND DEGREE.**    Evidence held sufficient to support verdict and conviction.

The evidence on a trial for homicide is stated, reviewed, and *held* to be sufficient to support a verdict and conviction for murder in the second degree. (*Post, pp.* 549-556.)

FROM MADISON.

Appeal from the Circuit Court of Madison County.— N. R. BARHAM, Judge.

BOND & BOND, COULTER & COULTER, R. P. RAINES, and T. W. POPE, for Mahon.

ASSISTANT ATTORNEY-GENERAL FAW, for State.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

The plaintiff in error was jointly indicted with Floyd Parr and Tasso Moore in the circuit court of Gibson county for the murder of D. W. Dickson, deceased. Upon application of the defendants, the venue was changed to Madison county, where the case was tried at the May term, 1911, in the criminal court of that county. On the 15th day of May the case was set for trial for the 22d of May. The trial judge, according to the bill of exceptions, ordered a special panel, out of which the trial jury was afterwards selected under the following circumstances:

"Be it remembered that on the 15th day of May, 1911, being the date this case was set for trial, the defendants were brought into open court, and the case was set for trial on the 22d day of May. Thereupon, the court being of the impression that a jury law had been recently passed by the general assembly of Tennessee, applied to Madison county, and that by the provision of which it was the duty of the court to designate names of persons to be summoned for jury service, the court informed counsel for both State and defense of the enactment of such a law, and stated to counsel the court would then and there designate the persons to be so summoned by the sheriff for jury service in this case unless they (counsel) should then and there consent for the sheriff to select and summon a panel under the old law, or in the way as provided before the enactment of said jury law. To this suggestion counsel for the State and counsel for the defendants made no objection—in fact, made no response to the suggestion of the court. Thereupon the judge, N. R. Barham, in open court designated and appointed 125 persons and citizens of Madison county as a panel from which to select a jury in this case, and ordered the sheriff to summon said persons so designated to be present at 8:30 o'clock a. m. on the 22d day of May, 1911.

"Thereupon, list of 125 names were called by the sheriff.

"Mr. Coulter: If the court please, the defendants desire to challenge the array, and move to discharge this panel, and direct the sheriff to summon another panel,

upon the ground that the court named and selected the jurors named in this panel under the misapprehension that the act of the present legislature applied to Madison county.

"The Court: Let your application and motion be overruled.

"Mr. Coulter: Note our exceptions."

The plaintiff in error was convicted of murder in the second degree and sentenced to imprisonment to twelve years in the penitentiary. His codefendants were acquitted. Upon the overruling of motions for a new trial and in arrest of judgment, plaintiff in error has appealed to this court and assigned errors.

The first and second assignments of error are:

(1) The court erred in designating and appointing 125 persons to be summoned by the sheriff to make a panel from which to select the jury to try the case.

(2) The court erred in overruling the challenge of the defendants to the array and their motion to discharge the panel.

His honor, as will be seen from the foregoing excerpt from the bill of exceptions, labored under the erroneous impression that chapter 115 of the Private Acts of 1911 applied to Madison county, and that under the provisions of that act, it was made his duty to designate and appoint persons to be summoned for jury service in the case then on trial. It is conceded that this act did not apply to Madison county.

It is insisted for the plaintiff in error that the trial judge was without power to designate the persons to compose the panel from which the jury was to be chosen.

Without deciding whether it was within the power of his honor to designate and appoint the panel from which the jury was to be chosen, we think for two reasons the plaintiff in error cannot make the objection raised in this court. In the first place, the trial court invited objection from the State and the defense to his designating and appointing the panel himself, if objection was desired to be made. He even inferentially requested that counsel consent "for the sheriff to select and summon a panel under the old law or in the way as provided before the enactment of said jury law." In other words, plaintiff in error was given the option to have the panel summoned in the manner that it is now insisted that it should have been done, notwithstanding the supposition upon the part of the court that the legislature had provided a new method of selecting the panel. Having had his opportunity to object at a time when the objection could have been made available in the court below, it is now too late to insist upon it in this court. *Hobbs* v. *State,* 121 Tenn., 413, 118 S. W., 262, 17 Ann. Cas., 177.

For another sufficient reason, the plaintiff in error cannot avail himself of the objection to the panel. Neither the challenge to the array nor the motion to quash the panel, made in the court below, was in writing. At the common law a challenge to the array was required to be in writing. This is said to have been the rule in volume 12 of the Encyclopedia of Pleading & Practice at page 426, and the author cites as his authority for

the statement: *People* v. *Brown,* 48 Cal., 253; *State* v. *Davis,* 41 Iowa, 311; *State* v. *Knight,* 43 Me., 11; *People* v. *Doe,* 1 Mich., 451; *State* v. *Taylor,* 134 Mo., 109, 35 S. W., 92; *Cox* v. *People,* 80 N. Y., 500; *Cooley* v. *State,* 38 Tex., 636. Mr. Chitty, in his valuable work, states the rule in substantially the same form at star page 546.

The reason of the rule seems to be that a challenge to the array and a motion to quash the panel are informal pleadings, and all pleadings in a court of record must be in writing. The challenge must also be specific, and point out with particularity the grounds relied upon for setting the panel aside. *People* v. *Collins,* 105 Cal., 504, 39 Pac., 16; *Perry* v. *State* (Tex. Cr. App.), 34 S. W., 618; 1 Chitty's Criminal Law, 537; Wharton's Criminal Pleading and Practice (9th Ed.), sec. 607; 24 Cyc., p. 331, note 24.

The third assignment is to the effect that the court erred in holding the talesmen Bryan and Herron, and certain others named in the assignment, competent jurors. Without setting out the examination of these talesmen on their *voir dire,* it is sufficient to say that we are of opinion that Bryan and Herron were both incompetent. It appears that Bryan had talked to Mrs. Roach, a witness for the State, and from his conversation with her had formed an opinion which was manifestly hostile to the plaintiff in error. She claimed to know the facts, and gave him a statement of them, from which he formed an opinion. He stated that he entertained the opinion at the time of his examination, but that he could lay it aside, and give the defendants

Mahon v. State.

fair and impartial trial, and try the case alone according to law and evidence, if there was proof to remove the opinion. The talesman Herron had talked to a person who, he understood, was telling the facts which this person had ascertained from talking to witnesses. He told the talesman how the killing occurred, and from this the talesman formed his opinion, which he entertained at the time of his examination. He said it would take proof to remove it, but that the opinion entertained would not have any weight with him in making his verdict, if the proof were sufficient.

Each of the foregoing incompetent jurors was challenged by the plaintiff in error peremptorily, and by the time that the twelfth juror was elected the plaintiff in error had exhausted all of his peremptory challenges. The twelfth juror was J. R. Cundiff, who qualified in answer to the formal questions, and was thus cross-examined by counsel for plaintiff in error:

"Q. Where do you live?

"A. Jackson.

"Q. What business are you engaged in?

"A. At present I am working for Craig & Taylor.

"Q. How long have you been here in Jackson?

"A. I have been here a number of years.

"Q. Engaged in that business?

"A. Only for a short while; I formerly railroaded here.

"Q. Do you know anything about the facts of this case?

"A. No more than the newspaper accounts.

"Q. Did you form an opinion from that?

"A. No, sir; I can't say that I did.

"Q. Have you any opinion on your mind now?

"A. Why I have not paid any attention to the case at all.

"Q. Since the trial has been called here, have you heard anybody discussing it?

"A. Not but very little.

"Mr. Pope: Challenge for cause.

"The Court: Challenge disallowed.

"Mr. Pope: Challenge peremptorily.

"The Court: Challenge overruled, because defendant's challenges exhausted. Take your seat in the jury box.

"Judge Bond: We beg to except to your honor's ruling."

So, while this juror was objectionable to the plaintiff in error, he was competent under the law. It is insisted for the State that under the authority of *Wooten* v. *State,* 99 Tenn., 189, 41 S. W., 813, the plaintiff in error cannot successfully object to the denial of his peremptory challenges by the trial judge in forcing upon him the designated talesmen, because the jury, as finally constituted, was composed of competent jurors under the law, and was fair and impartial. The case cited, however, is not authority for this insistence. In that case Wooten did not seek to peremptorily challenge the

twelfth juror, although he had previously exhausted his peremptory challenges, and had been forced to spend some of them upon incompetent talesmen. It has never been held in any reported case in this State that the wrongful denial to a defendant of one or more challenges was not reversible error, if any juror elected to try the case was objectionable to the accused. *K. of P. v. Steele,* 108 Tenn., 624, 69 S. W., 336, and *Wooten v. State,* supra, are not to the contrary. However, the State relies upon chapter 32, Acts of 1911, as follows:

"Be it enacted by the general assembly of the State of Tennessee, that no verdict or judgment shall be set aside or a new trial granted by any of the appellate courts of this State, in any civil or criminal cause, on the ground of error in the charge of the judge to the jury, or on account of the improper admission or rejection of evidence, or for error in acting on any pleading, demurrer, or indictment, or for any error in any procedure in the cause, unless, in the opinion of the appellate court to which application is made, after an examination of the entire record in the cause, it shall affirmatively appear that the error complained of has affected the results of the trial."

The plaintiff in error assails the foregoing enactment as unconstitutional and void, because in conflict with article 1, secs. 8, 9, and 14, and article 11, sec. 2, and article 6, sec. 9, of the constitution of Tennessee.

The constitution of this State guarantees to the accused a fair and impartial trial, which necessarily in-

Mahon v. State.

cludes a trial before a fair and impartial jury. The constitution does not secure to him the right to challenge proposed jurors peremptorily. This is a privilege only granted to the accused as a matter of free grace by the legislature. It does secure him the right to challenge for any cause which renders the jury partial, because it is only in this way that its guaranty of a fair and impartial trial can be secured to him in the practical administration of justice. The right of peremptory challenge, which means the right to stand aside a proposed juror without any assigned cause other than the mere objection of the accused, is a right that can be regulated by statute. As was well said in *Wooten* v. *State,* supra, "The right to challenge is a right to reject, not to select a jury. If from those who remain an impartial jury is obtained, the constitutional right of the accused is maintained." Chapter 32 of the Acts of 1911, supra, can and does regulate the procedure of this court, in so far as it does not infringe upon the constitutional right of a fair and impartial trial. As the legislature gave to the accused the right to challenge peremptorily, it may take it away; and by the same reasoning, it may regulate and limit the power of this court in granting new trials for a refusal of the trial judge to allow such challenges. As applied to this case, the statute referred to merely says in effect that, although the accused may be deprived of the statutory number of peremptory challenges, yet, unless it appear that he was denied a trial by a fair and impartial jury, no new trial shall be had.

As stated, it is within the power of the legislature to regulate matters of mere procedure in both the trial and appellate courts. *Brinkley* v. *State,* 125 Tenn., 371, 143 S. W., 1120.

It is not within the power of the legislature to infringe upon the constitutional guaranty of a fair and impartial trial before a fair and impartial jury, but there is no insistence in this case that the trial jury was not unobjectionable in every legal sense. The complaint is that plaintiff in error was denied certain peremptory challenges, and in that way he was compelled to accept upon the jury one juror who was objectionable to him for some reason not assigned, but who was admittedly competent and qualified under the law. Construed in this way, and as regulating the procedure of this court to this extent, chapter 32, Acts of 1911, is not obnoxious to any provision of the constitution, and does no violence to any constitutional right of the accused. We do not feel called upon to express any further opinion upon the validity or construction of the statute. Those questions will be dealt with as they arise.

The fourth assignment of error is that the evidence preponderates against the verdict of guilty and in favor of the innocence of the prisoner. This assignment is formulated according to the well-known rule of this court that it will not reverse a criminal case upon the evidence, unless it is shown that the evidence preponderates against the verdict of guilty and in favor of the innocence of the prisoner. Anything short of such a

rule in this court would result in a lax and nerveless enforcement of the law, which would fail to protect society against the offenses of the criminal, and would convert a revising court into a mere trier of facts. The legal basis of the rule is well established in our cases, which are reviewed at length in the case of *Cooper* v. *State,* 123 Tenn., 37, 138 S. W., 826. In this court, the burden is upon the plaintiff in error to show his innocence by a preponderance of the evidence. By the verdict of the jury, approved by the trial judge, the presumption of his innocence has been removed and converted into an adjudication of his guilt. Therefore, the inquiry here is not whether he is guilty, and the investigation of the record is not made with that in view. But the question is, Is he innocent? and the record is investigated upon an assumption of his guilt. Immaterial conflicts in the testimony of witnesses are not considered. Discrepancies in dates and distances, which are not controlling in their materiality, are disregarded. In many cases, the mere weight to be given to the testimony of witnesses, arising out of their number and general reputation is disregarded because these questions are all deemed to have been settled by the jury and trial judge, who saw them upon the stand.

The plaintiff in error relied upon a plea of self-defense. His statement of the homicide, in substance, is that the deceased, who was a member of the police force of the city of Trenton, approached him in a manner which indicated that the deceased intended to search

Mahon v. State.

the plaintiff in error; and to avoid being searched, the plaintiff in error walked away from the deceased in a stooping position, and while thus walking away the deceased opened fire upon plaintiff in error, shooting him in the back. The deceased then fired a second shot, which missed, whereupon plaintiff in error drew his pistol, turned, and fired five times at deceased, and then left the scene, mounted his horse, which was hitched a short distance away, and rode to his home, which was about a mile and a half distant from Trenton.

The theory of the State in the trial court was that Mahon, together with his codefendants, Parr and Moore, had formed a conspiracy to kill the deceased; but, in view of the verdict of the jury, it is not material to note further the alleged conspiracy in disposing of the case in this court. The theory of the State in this court is that the evidence does not preponderate against the verdict, which means that the plaintiff in error slew the deceased in such a way and under such circumstances as would make him guilty of murder in the second degree.

The plaintiff in error is shown by a large number of witnesses to be a man of bad character, as were his codefendants, Parr and Moore. Parr conducted a pool room in Trenton, and there is evidence indicating that he conducted a blind tiger in connection with it. Moore is a young boy, about eighteen years of age, who, while discredited upon the record by the testimony of witnesses, is perhaps, merely worthless and disreputable,

Mahon v. State.

rather than cruel and vicious. Plaintiff in error, after having his supper at home, mounted his horse and rode to Trenton about dark on the night of the homicide, and went to the pool room of Parr. Shortly afterwards, Moore arrived at the pool room, and the three began to drink. Later on they set out about the town, and went to the house of Nellie Crenshaw (colored), which is a disreputable place visited by negroes. While there, the plaintiff in error raised a disturbance, so much so that one of the inmates of the house went to the house of a white lady, who, at the instance of this negro woman, telephoned the deceased of the conduct of plaintiff in error and his associates, and requested him to come to the Crenshaw house. The deceased started to this place, but before arriving there the plaintiff in error and his associates had left. While there, the deceased learned from the inmates of the house of the conduct of plaintiff in error, and left the Crenshaw house presumably in search of Mahon. While going along the sidewalk on Church street, between First and Eaton streets, and on the north side of Church street, the deceased saw plaintiff in error and Moore going southward on Church street and in the middle of the street. The deceased called to the plaintiff in error and said, "Is that you, Vaulx?" to which plaintiff in error replied, "Yes." The deceased then walked down to the street toward the plaintiff in error. Moore proceeded south on Church street, leading his horse, and he states that he had gone quite a distance before the shooting began. There is

no direct evidence of what occurred between **plaintiff** **in error** and the deceased, other than the **testimony** of the **plaintiff** in error, the substance of which **we have** heretofore given. It is conceded, however, that **the deceased** fired two shots, and the plaintiff in error **fired** five shots; that the deceased had a 38 special Smith & Wesson revolver, and the plaintiff in error had a 32 Colt's automatic revolver. The State insists that plaintiff in error fired five shots before the deceased fired, and the deceased then fired two shots. The plaintiff in error insists that the deceased fired two shots before he fired, and that he then fired five shots. The deceased was found lying prone upon his back, with his nerves relaxed, his arms and legs extended. The shot entered the body two inches above the heart and a little to the left of the nipple line. The ball ranged backwards and downwards at an angle of probably forty-five degrees and slightly inwards, and imbedded itself in the back between one and two inches to the left of the spine, and about the twelfth rib. The ball penetrated the left ventricle of the heart and the lower lobe of the left lung. The plaintiff in error was wounded in the back of the neck about eight inches below the hair line; the ball passing from the point of contact along the outer surface of the skin and lodging near the base of the skull or in the neck.

The State's proof shows that the plaintiff in error had repeatedly stated, with oaths and vile epithets, that **he would never be arrested** by any officer in Trenton

again; that when warned by a friend on the night of the homicide. that the deceased (who had only one eye) might arrest him for being drunk and disorderly, the plaintiff in error replied that "no one-eyed son of bitch could arrest him." Other witnesses for the State testify that, in making substantially the same statement about officers of the peace, plaintiff in error would say that he was going to kill the first one that tried to arrest him, and that he had bought a good gun to do it with. Statements of this character, couched in the vilest language. are proven to have been made on Saturday night before the homicide on Monday night, as well as the statement just referred to on the evening of the homicide.

The State showed by a number of witnesses that they heard the firing, and the reports of the first shots went "tap! tap! tap! tap! tap!" and the reports of the second shots, went "boom! boom!" and, after a short interval, another report like the two last. This last shot was fired by Hall, who had gone to the scene of the killing, in an effort to bring assistance. It is shown that the report of the Smith & Wesson pistol, carried by the deceased, was much louder than the Colt's automatic pistol, carried by plaintiff in error. The witnesses who heard the shots, and say that the shooting occurred, first five sharp reports, followed by two reports much louder, and then, after a short interval. one loud report, are twelve in number. These are all reputable citizens of Trenton, wholly disinterested. so far as the record discloses, in the result of the litigation. The State

introduced seven other witnesses, who proved the order of the shots to have been as stated by the twelve witnesses, who proved the order and number of the shots fired from each revolver.  These seven do not undertake to say how many shots were fired, but they all agree that all of the light or sharp reports were heard before the loud reports.  The plaintiff in error introduced five witnesses, who disagree with the seventeen witnesses of the State as to the order in which the reports occurred; these witnesses remembering that the first reports were the loud ones.  These five witnesses, together with the testimony of the plaintiff in error, are substantially all that the defense has to countervail the testimony of the State as to who fired the first shot.  The plaintiff in error insists that the deceased died instantly, and therefore he must have fired first, because it would have been a physical impossibility for him to have fired the two shots which it is admitted that he fired after receiving the wound which resulted in his death.  This insistence is predicated upon the fact that the deceased was found prone upon the ground, with his arms and legs extended and his revolver on the ground near his hands, and no sign of blood from the mouth and nostrils.  Two physicians are introduced as expert witnesses, who, in reply to hypothetical questions embracing the facts of the nature of the wound and the position of the deceased, say that the probabilities are that death resulted instantaneously.  Upon the fact as to whether or not the deceased had blood in his mouth, it is not proven by Dr.

Bennett, as insisted by counsel for plaintiff in error, that there was no blood in the mouth and nostrils. Dr. Bennett says that he did not see any stain of blood in the nostrils, but that Dr. Faucett spoke of seeing blood in his mouth, and that he seemed to have it in his lungs. This, however, is all theoretical.

Upon the authorities, it is not a physical impossibility for the deceased to have been wounded in a ventricle of the heart and have lived some time afterwards. The State introduced a number of witnesses who came upon the scene of the homicide a very short time after the shooting, who say that they saw the deceased and he was still living. One witness says that, after the deceased was placed upon a cot to be carried away for treatment, he examined his pulses and that they were still beating. A number of witnesses testify to having heard a call for help coming from the direction of the place at which the deceased was found, and one of them thought at the time that it was the voice of the deceased. Upon the testimony of these witnesses, opposed alone as it is by theory, it is beyond question that the deceased did not die instantaneously, but that he was alive for some minutes after he received the fatal wound.

In addition to the foregoing proof, it is shown by a witness for the State that the plaintiff in error came to his house shortly after the shooting and stated to this witness that he had killed the deceased, and that he killed him because the deceased had him under arrest. The language attributed to the plaintiff in error by this witness upon this point is as follows:

"He had me, and I have told you time and again that I would die before I would be arrested, and I had to do it. It is done; I cannot help it. I am sorry it is done; but I cannot help it."

It is true that an assult was made upon the testimony of this witness by the defense; but these discrepancies, and the credibility of the witnesses, were submitted to the jury, and they have found in favor of the State. Upon this testimony, we think it is quite clear that the evidence not only does not preponderate against the verdict, but that the verdict is well supported.

The remaining thirty-three assignments of error deal with supposed errors of the trial judge in admitting and excluding certain evidence, errors in his charge to the jury, and in his refusal to give in charge certain special requests tendered by the plaintiff in error. It is impracticable for us to deal separately with each assignment in this opinion. It is sufficient to say that we have examined them all, and we find no reversible error in any of them. It would be of no profit to take them up separately, as none of the questions presented are novel.

The result is that the judgment of the criminal court is affirmed.