# JACKIE LAYMAN, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. Feb. 19, 1968.

Certiorari Denied by Supreme Court July 15, 1968.

Franklin Park, Jefferson City, Rex McGee, Knoxville, Roger W. Smith, Newport, for plaintiff in error.

George F. McCanless, Atty. Gen., Thomas E. Fox, Deputy Atty. Gen., Nashville, for defendant in error.

## OPINION

WALKER, Presiding Judge.

The defendant, Jackie Layman, has appealed from a conviction of murder in the first degree, his punishment being fixed by the jury at ninety-nine years in the State penitentiary.

He was jointly indicted with one Ovanley Dunham, and they were being tried together until it developed that Dunham was no longer mentally competent to stand trial. A mistrial was declared as to him, and the trial proceeded to the conviction of this defendant.

The deceased, Sam Overton, a clerk at the Super Dollar Market in Newport, was killed at 8:30 A.M., October 7, 1966, as he left the store on his way to a bank with $19,862.61. An eye witness, Mrs. Harriet Cureton, identified the defendant and Dunham as the perpetrators of the robbery and murder.

Two other witnesses saw Dunham immediately after the shots were fired picking up the money, throwing it in a 1962 Pontiac automobile, and leaving with another person whom they were unable to identify.

The State's proof thoroughly corroborated the testimony of the eye witnesses. The day before the murder the defendant and a man who fit the description of Dunham went to a used car lot in Newport and tried out a 1964 Oldsmobile. The Pontiac used in the robbery was also on the lot. They had access to the serial numbers on the two automobiles. The defendant gave the Oldsmobile number to a keysmith and had a key made for it. A short time later Dunham had a key made for the Pontiac by the same keysmith. This key was also made by use of the serial number.

There are a number of other circumstances indicating the defendant's guilt, but no question is raised relative to the weight of the evidence. The defendant relied on an alibi. Under the rule set out in Cooper v. State, 123 Tenn. 37, 138 N.W. 826, and McBee v. State, 213 Tenn. 15, 372 S.W.2d 173, the verdict of the jury, approved by the trial judge, accredits the testimony of the State and resolves all conflict in favor of the theory of the State. The conviction will not be reversed on the facts unless it is shown that the evidence preponderates

against the verdict and in favor of the innocence of the accused. That has not been done.

The defendant assigns as error that the trial judge erred in unduly restricting voir dire examination of prospective jurors. It is specifically contended that the trial judge erred in refusing a challenge for cause as to prospective jurors Earl Moore, Charles Edward Cate, Samuel E. Strange, Bobby Ottinger, Kenneth Black, Emmit Lundsford, J. O. McCurry and Rex Allen Gregg.

In addition to the regular panel of jurors, a special panel of 300 was summoned for this case. The judge gave the defendant the choice of placing the regular jury first on a panel of fifty-four or of placing all the jurors, regular and special, on the same panel. The defendant preferred that all be on the same panel. In this way fewer of the regular jurors would be drawn unless the entire panel was examined.

At the defendant's suggestion, the prospective jurors were kept from the courtroom while most of the jury was selected. They were brought to the judge's chambers in small numbers and then called individually to the courtroom for their examination.

The trial judge propounded questions concerning their opinions and bias and whether they would be fair and impartial jurors. When he found a juror competent, he passed him to the State for examination; otherwise he excused him. In the examination of some of the jurors named by the defendant, the trial court limited examination that sought to show they had formed opinions based on rumor or that it would be embarrassing to return a verdict in the case.

Of those named by the defendant, Charles Edward Cate, Samuel E. Strange, and Rex Allen Gregg were excused by his codefendant Dunham. Emmit Lundsford was first challenged by the defendant, but the Court later excused him for cause. Bobby Ottinger was excused by the Court for cause, but we believe that the juror in question was James D. Ottinger and have considered his examination. The defendant challenged him for cause and later peremptorily.

None of the named prospective jurors were accepted as members of the jury. The trial court allowed the defendant sixteen peremptory challenges, one more than required.

After defendant's peremptory challenges were exhausted, the only juror he challenged for cause was Rex Allen Gregg. He was excused peremptorily by Dunham and was not a member of the jury.

Eleven jurors had been selected when the defendant exhausted his challenges, including the extra one allowed by the Court. The entire examination of the twelfth juror is as follows:

"* * * Alright go. Call another Juror.

*THE SHERIFF:*

#52—Loyd F. Cashen.

*THE COURT:*

Come right around here. Have you formed or expressed any opinion relative to the guilt or innocence of Jackie Layman and Ovanley Dunham or either of them on a charge of murder?

A. No, I've not.

If you are accepted as a Juror, would you go by the Law which I give you and the evidence as given you by the witnesses?

A. Yeah, I'd say I would.

You would do that. Do you have any interest in this case?

A. No.

Are you connected or associated with any of the parties?

A. No, sir.

Do you know any of them?

A. I knowed Sam a little.

Knew Sam?

A. Yeah, I knew Sam.

But that would not be in your way, about rendering a fair verdict? You will go by the Law and the evidence, whatever it is?

A. Well I—yes sir.

You would do that. He is competent.

*ATTY. PORTER:*

Did you say that you did not know Jackie Layman?

A. No, sir, I don't know Jackie.

And don't know any of his family?

A. No, sir.

The State passes the Juror.

*ATTY. PARKS:*

Where do you live Mr. Cashen?

A. Baltimore Section. 7th district.

Are you related to Charlie Cashen?

A. Son.

We are out of challengers.

*THE COURT:*

Do you take him?

*ATTY. PARKS:*

Don't take him, we are out of challenges.

*THE COURT:*

Alright, what do you say to the Juror?

*ATTY. DUNN:*

Mr. Cashen did you state you had not formed an opinion about this case?

A. No, I've not formed—sort of talked about it a little, but I've not formed no opinion about it.

You've talked about it and you've overheard other people talk about it?

A. Yeah.

In other words what you're saying is then that you are standing here today with an open mind as far as the guilt or innocence of Mr. Dunham and Mr. Layman are concerned?

A. Yes sir.

And if we accepted you as a Juror, and you took a seat in the box, and heard this case, you would take with you an open mind, is that right?

A. Yes sir.

Would you with your knowledge and association with Mr. Sam Overton during his lifetime have any effect on you as far as sitting as a Juror and listen to the Law and the evidence?

A. I just knowed him, knowed him pretty good, nothing extra though, just knowed him.

It wouldn't be embarrassing to you to sit as a Juror because of this knowledge?

A. No.

Have you ever been a prosecutor in a lawsuit?

A. No, sir.

If we accepted you as a Juror and after hearing all of the Law and the evidence, if there was a reasonable doubt left in your mind as to the guilt of these Defendants, would you come out and vote to acquit them?

A. If I thought they was any doubt, I would.

Have a seat please."

■ The defense counsel did not challenge this juror for cause or indicate that he considered him disqualified for cause. His statement was not a peremptory challenge, and there is no showing that the alleged error in denying challenges for cause resulted in the acceptance of an incompetent juror. There is no claim that this juror was anything but fair. From our study of other jurors on their voir dire, all who were finally accepted were fair and impartial. The jury was composed of unbiased and unprejudiced jurors, and we cannot reverse unless prejudice results from the error claimed. See Kirkendoll v. State, 198 Tenn. 497, 281 S.W.2d 243; Long v. State, 187 Tenn. 139, 213 S.W.2d 37.

Our Supreme Court has said in Mahon v. State, 127 Tenn. 535, 156 S.W. 458:

"The Constitution of this state guarantees to the accused a fair and impartial trial, which necessarily includes a trial before a fair and impartial jury. The Constitution does not secure to him the right to challenge proposed jurors peremptorily. This is a privilege only granted to the accused as a matter of free grace by the Legislature. It does secure him the right to

challenge for any cause which renders the jury partial, because it is only in this way that its guaranty of a fair and impartial trial can be secured to him in the practical administration of justice. The right of peremptory challenge, which means the right to stand aside a proposed juror without any assigned cause other than the mere objection of the accused, is a right that can be regulated by statute. As was well said in Wooten v. State, [99 Tenn. 189, 41 S.W. 813], supra, 'The right to challenge is a right to reject, not to select a jury. If from those who remain an impartial jury is obtained, the constitutional right of the accused is maintained.' "

■ We do not think that the trial judge abused his discretion in the examination of jurors by limiting questions seeking to disqualify them.

It was said in Kennedy v. State, 186 Tenn. 310, 210 S.W.2d 132:

"The next insistence is that the trial court erred in unduly restricting counsel for the defendant in their examination of prospective jurors. The trial judge has a wide discretion in these matters, and his action will not be disturbed unless there has been an abuse of this discretion. No such abuse of discretion appears here. Foute v. State, 83 Tenn. 712."

■ The defendant assigns as error that the Court erred in his examination of the prospective juror Bobby Lewis, and that he should have declared a mistrial when the prospective juror said in the presence of some already selected that he could not say the man was innocent

when he had already formed an opinion on the case. The trial judge had attempted to qualify the juror, but it developed that he was a close personal friend of the deceased and could not be a fair juror. He was excused for cause. His statements and opinion were rumor as far as the other jurors were concerned and could not have been prejudicial to the other jurors, especially when the trial judge dismissed him when his bias was apparent. There was no error in refusing to declare a mistrial for this reason.

The defendant says that the trial judge erred in not making the names of prospective jurors available to him until two hours before the trial commenced.

■ Section 40-2505, T.C.A., provides that the defendant is entitled to a list of the jurors summoned a reasonable time before the formation of the jury is commenced. The defendant had a local attorney and one from a neighboring county. He and his family lived in Newport. The trial judge did not abuse his discretion in waiting until two hours before the trial to furnish the names of prospective jurors to the defendant.

In Cooley v. State, 174 Tenn. 168, 124 S.W.2d 250, the defendant's request prior to the selection of a jury for a list of the prospective jurors was denied him. It was held that, having had a fair and impartial trial, he could not complain of this error. This assignment is overruled.

The defendant complains of the conduct of his co-defendant Dunham in the presence of the jury and says that a mistrial should have been declared as to this defendant.

On the morning of the trial, counsel for Dunham moved that the case be passed because there was serious doubt as to whether he was mentally competent to stand trial. This motion was overruled. The case proceeded as to both defendants until the third day, at which time Dunham's counsel renewed their motion to pass the case and have medical proof taken as to his mental condition. Dunham had not come into the courtroom at this time. He was brought in from the jail by officers. From his appearance and conduct, it was apparent that it was necessary to investigate his mental condition. The Court ordered a recess and had him sent to Eastern State Hospital at Knoxville for an examination.

The defendant Layman moved for a severance, which was granted. He also moved for a mistrial for the conduct of Dunham before the jury. The motion for a mistrial was denied.

The Court called the jury back and explained that a situation had arisen which none could avoid, that the case would continue as to Layman alone, and that Dunham was no longer a party defendant.

Dunham's conduct was not such an occurrence as would prejudice the jury against this defendant and influence them in consideration of his case. The allowance or refusal of a motion for a mistrial rests largely in the discretion of the Court, and the trial judge did not abuse his discretion in refusing the motion for a mistrial.

All assignments are overruled and the judgment of the trial court is affirmed.

GILLIAM and OLIVER, JJ., concur.