THEODORE OLSON v. JOSEPH MICHENER, Appellant.

**Partnership:** EVIDENCE: ACCOUNTING. In this action for an accounting between partners, the evidence is reviewed and held to show that plaintiff had an interest in the profits on a sale of horses; and to support a finding that there was a partnership relation entitling him to an accounting.

*Appeal from Pottawattamie District Court.*—HON. W. R. GREEN, Judge.

FRIDAY, DECEMBER 13, 1912.

THE facts are stated in the opinion.—*Affirmed.*

*Fremont Benjamin* and *Verne Benjamin,* for appellant.

*F. E. Gill* and *Geo. H. Mayne,* for appellee.

SHERWIN, J.—This is an action in equity, brought by the plaintiff against the defendant for a partnership accounting. There was a judgment for the plaintiff, from which the defendant appeals.

At the time of the transaction in question John S. Cooper

was engaged in the horse commission business at South Omaha, Neb., and the appellant, Joseph Michener, was employed by Cooper as an auctioneer and solicitor of business. Appellant was also engaged in buying horses on his own account for sale through the Cooper commission house in South Omaha. The plaintiff lived in Sioux City, Iowa, and had been handling range horses for a number of years. In May, 1907, plaintiff and the defendant met in Sioux City, where they had a talk about the purchase and sale of Western horses, and according to the plaintiff's testimony, where they first talked about forming a partnership for the purpose of buying range horses and selling them through the Cooper sales. No definite final arrangement was made at that time, but defendant asked the plaintiff to go to South Omaha at a later time for the purpose of further considering the matter of a partnership, telling the plaintiff that he knew where they could buy horses that would make them money. On the 14th of May, the Plaintiff went to South Omaha, where he met the defendant, and they again talked of a partnership. The defendant then told the plaintiff that there were several bands of horses in the Laramie Plains district that could be bought, and particularly spoke of a band of about 3,000 horses called the Smith & Moore horses. This band of horses had been owned by a partnership composed of J. A. Smith and Alexander Moore. Alexander Moore had recently died, and the horses were to be sold by the surviving partner, J. A. Smith. There is evidence tending to show that in the conversation at this time the defendant showed the plaintiff letters that he had received from Sam Moore, who was a son and heir of the deceased, Alexander Moore, in reference to these horses. It was finally agreed between plaintiff and defendant that they would go together to Wyoming for the purpose of looking at these horses and buying them, if they could be bought right. Following out this arrangement, they went to Wheatland, Wyo., for the purpose of buying the Smith & Moore horses, arriving there on the 19th of May.

Sam Moore lived in Wheatland, and they at once arranged with him to go with them to the Smith & Moore ranch at Toltec to meet J. A. Smith, look at the horses, and see if they could buy them; Olson hiring a livery team for the trip and paying therefor. The ranch was some eighty miles from Wheatland, as we understand the record, and after these parties had got about half way there they learned that J. A. Smith had already sold the horses to one Gallup, of South Omaha, and they then immediately went back to Wheatland. Sam Moore, who, as one of the heirs of Alexander Moore, had an interest in the horses, was dissatisfied with the sale to Gallup, and there is evidence tending to show that he asked Michener and Olson if they would give more for the horses, and they told him they would pay $40 a head for them, if that price was necessary to get them.

On the same day a contract was made by Michener & Olson, as a partnership, to buy horses owned by Sam Moore alone, and Olson testified that he told Michener that he would become a partner in the contract with Sam Moore, on condition that all horses that were bought in the Laramie Plains district were to be bought in partnership, and that such agreement was then definitely made. After the purchase of the Sam Moore horses, it was agreed that all three of them would go to Cheyenne and see Mr. J. A. Smith, and, if possible, get him to cancel the Gallup contract for the Smith & Moore horses. They went to Cheyenne, saw Mr. Smith, and Olson offered him $40 a head for the horses, as he testifies, acting upon Michener's suggestion. Smith told him that the horses were sold; "that it was too bad, but he couldn't do anything for him." This offer was made on behalf of Michener & Olson. Sam Moore at that time told Smith that he was not satisfied with the sale that had been made to Gallup, and that he would not stand for a sale of the horses at $35 a head, which was the price that Gallup was to pay. The principal bands of horses in the Laramie Plains district were the Smith & Moore horses, the Sam Moore horses, the

Frank Amos horses, the Bowles & Wright horses, and the Qualey horses; and after the meeting in Cheyenne, to which we have referred, Michener & Olson, as a partnership, entered into contracts for and bought the Amos, the Bowles & Wright, and the Qualey horses. The Sam Moore horses they had already bought, and Michener also subsequently bought other horses for the partnership. While Michener claims that their partnership relations ceased about the 15th of June, the defendant's subsequent acts, and a letter written by him to the plaintiff on the 17th of June, sustain the plaintiff's contention that the relationship still continued. We shall again refer to this letter later on.

Plaintiff and defendant met in South Omaha on the 15th of June, and under an agreement then made Olson went back to Wyoming, where he completed the purchase of the Qualey horses for the partnership on the 18th of June. Michener went to Cheyenne for a conference with J. A. Smith and Sam Moore relative to the purchase of the Smith & Moore, horses, and on the 17th of June he wrote the plaintiff from Cheyenne as follows: "Will go to Omaha to-night or to-morrow with Smith and Sam to try and get the horses, but keep this to yourself. Think they can get them back. Have you bought anything yet? Did you get the Qualey horses? Let me know at Omaha what you have done. Sam is sober and fine, and is all business now. It makes things quite different. Keep me posted what you buy, so I can arrange accordingly." Michener, Smith, and Moore came together to South Omaha, as it was stated in Michener's letter they would, and there Smith made arrangements with Gallup to cancel his contract with him for the sale of the Smith & Moore horses to him, and paid Gallup $10,000 for such cancellation; the money being advanced by John S. Cooper. As soon as this was done, on the 24th of June, Smith made a contract with Michener to sell the horses to him at $40 per head, the $10,000 advanced by Cooper for Gallup to be the first payment thereon. All of the horses were to be delivered

before the 15th of November, 1908. Later in the same day, and without the knowledge of J. A. Smith, a written agreement was made by Michener and Sam Moore, by which Moore. was to have one-half interest in the profits of the deal. At this time Olson was in Wyoming, looking for horses to buy for the firm of Michener & Olson, and he did not learn of the purchase by Michener, of the Smith & Moore horses until he was told thereof by the foreman of the Smith & Moore ranch. Olson did not see Michener until he met him in South Omaha, shortly after, and Michener at first denied having bought the Smith & Moore horses. He afterwards admitted that he had bought them, and said that he had to take Sam Moore in on the deal in order to get it through. Olson made objections to sharing the profits of the transaction with Moore, whereupon Michener assured him that they could buy Moore out for a small sum. Under the contract, the first delivery of the Smith & Moore horses was to be made on the 2d of August, 1907, at Medicine Bow, Wyo. This first shipment was made, and the horses were sold at South Omaha, through Cooper's house. Olson did not know until after this sale that Michener did not intend to share the profits with him, and when he learned the true situation he consulted an attorney, and was by him advised to take no action at once, but to watch the sales, and keep track of the proceeds, and thereafter bring an action for an accounting, all of which Olson did. The profits derived from the sale of the Smith & Moore horses were over $28,000.

While the defendant denies many of the more important facts recited above, and produces some evidence tending to sustain his denials and his version of some of the transactions, we think such facts are well established by the record, when the relations of the parties and their several transactions immediately preceding the purchase of the Smith & Moore horses are given their proper weight. The most serious matters, tending to throw suspicion on the correctness of the plaintiff's claim, are his attempt to buy off Sam Moore, and his failure to assert his claimed right as the horses were being

sold during the seasons of 1907 and 1908. But as to both of these matters there is a fair explanation. If plaintiff is correct in his statement that Michener assured him that Moore had to be taken into the deal to secure the horses, and suggested to him that Moore could be bought off for a small sum, it explains his action along that line, because he might well deem it wiser to surrender a small part of the profits from the horses rather than a greater sum. He says that Michener told him that Moore could be bought off for $500 or $1,000, and that would evidently have been a wise buy. As to the other point, plaintiff consulted a reputable attorney and acted upon his advice, and if he did so honestly, and in the belief that it pointed out the wisest course, the circumstance is entitled to but little, if any, weight against his present claim. We have given the record careful consideration, in the light of able and full oral argument on both sides, and we are united in the conclusion that the plaintiff has established a partnership in the Smith & Moore horses, and that he is entitled to recover herein. The trial court gave him a judgment for one-fourth of the profits arising therefrom, with interest, and such judgment is *Affirmed.*