COOLEY *v.* STATE.

(*Nashville*, December Term, 1938.)

Opinion filed Feb. 4, 1939.

JOHN E. GARNER, of Springfield, for plaintiff in error.

NAT TIPTON, Assistant Attorney-General, for the State.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Cooley appeals from a conviction of assault with intent to commit murder in the second degree on one Mike Tarasan, with a prison sentence of not more than three years.

That he seriously cut the prosecutor is not denied, but self-defense is relied on. The difficulty occurred at the dance hall operated by Tarasan on a night when Cooley had visited the place. A dispute arose as to

Cooley's payment for certain food, etc., and Tarasan ordered him away and sought to evict him. The cutting took place outside of the building either in the space in which Tarasan maintained gasoline pumps, or in the roadway adjacent. Cooley contends and testifies that Tarasan was rough and abusive of him and was in the act of striking him with a rock or brickbat when he cut him in self-defense. The wounds were serious. Cooley was sustained to some extent by testimony he introduced, but this testimony was not altogether consistent as to the details and his chief witness was evidently considerably intoxicated. On the other hand, the State supported Tarasan by several witnesses who had stopped to buy gas and were wholly disinterested. It is unnecessary to elaborate further. It is apparent that there was a conflict in the evidence which it was the province of the jury to settle, and, it having seen and heard the witnesses and passed on their credibility, and decided the issues in favor of the State's contention, this Court cannot say that the evidence preponderates against its finding.

The assignments of error present two questions relating to the selection of the jury. The record touching these questions is not at all clear, leaving some doubt as to just what were the questions intended to be made in the trial Court and what disposition was made of them and why.

The first of these, and the one apparently most seriously pressed in this Court, is that the trial Judge refused upon demand to have the jury drawn from a jury box, as provided by Chapter 169, Private Acts of 1925, providing a jury law for Robertson County. The Court appears to have overruled this request and directed the sheriff to summon veniremen from the bystanders and the

body of the County. After the jury had been selected and twelve jurors were in the box, but before the jury was sworn, an oral challenge was interposed to the array.

The record shows that the Court refused to permit the jury to be drawn from the jury box, announcing that he ''declared an emergency and ordered the jury summoned by the sheriff from the bystanders and the County at large.'' It is insisted for plaintiff-in-error that the Judge gave no reason for his holding that an emergency existed, and that none did exist in fact, and that it was error for him to refuse the demand on this ground.

The Attorney-General insists that this assignment can not be sustained because, in the first place, it is a well settled rule that a challenge to the array is the only manner in which this question as to the matter of selecting and summoning the panel can be made, and that (1) the challenge must be made before the jury has been selected, and (2) it must be in writing, setting forth specifically the grounds relied on. 35 C. J., page 377, is quoted for the proposition that the objection comes too late after the defendant has pleaded to the indictment and the trial has been entered upon, or after the jury has been completed, etc. And, upon the proposition that the challenge must be in writing, the holding of this Court in *Mahon* v. *State,* 127 Tenn., 535, 542, 156 S. W., 458, is relied on. The opinion in that case seems clearly to sustain this proposition, citing many authorities. It is apparent that the challenge in the present case did not conform to this rule.

And, for another reason, we think this assignment must be overruled. The recital in the bill of exceptions touching this point and the record otherwise merely shows that the Court refused the request and did

so on the ground that he had declared an emergency, as heretofore shown. The Private Act relied on expressly provides, in Section 7, that, "In case of emergency the presiding judge may, in his discretion, where the regular panel has been exhausted before the jury is completed, furnish the sheriff with additional names," etc. Since the record in this case shows that the Court exercised his discretion and declared an emergency and thereupon proceeded to act, the rule of presumption in favor of judgments and decrees comes into play, and it must be here presumed that the Judge had before him such facts and circumstances as justified him in the action taken. In other words, since the record does not show that the condition prescribed by the statute did not exist, then this Court must assume that it did exist.

For both the reasons above indicated, this assignment must be overruled.

■■ The second of the contentions made touching the selection of the jury is based upon a recital in the bill of exceptions to the effect that the defendant "demanded a panel of jurors, but none was furnished the defendant," to which action the defendant excepted. Reliance is had upon what is insisted is thus shown to have been a violation of our statute, now Section 11745 of the Code, providing that "the defendant is entitled to a list of the jurors summoned, to be furnished him a reasonable time before the formation of a jury is commenced."

It is particularly with reference to this matter that we find the record confusing. The recital hereinbefore quoted from appears on the first page of the bill of exceptions. It immediately follows the recital of the demand and refusal hereinbefore dealt with, that the jury be drawn from

the jury box. On the motion for a new trial the Clerk of the Court was introduced and examined at length. He is asked, among other things, if there was any request or demand made by the defendant or his attorneys "for any special panel or venire to try the case," to which he replied, "Not that I remember." He is asked a good many questions as to the furnishing of a list of the panel of jurors, but these inquiries seem to have been directed to the regular panel, as to which he testifies that he did, in accordance with his custom, make available a number of these lists to all the members of the bar. He is also asked a good many questions as to what took place with respect to the selection of the jury, but this Court is utterly unable to determine the relevancy of some of these questions and answers if the issue was that now made, namely, that the defendant was refused, upon his demand, a list of the jury panel from which the jurors which tried him were selected. It seems to us not at all unlikely that in point of fact the trial Judge did not understand that the demand made was directed to a request for this list, but viewed the demand being made by counsel as a demand touching the matter hereinbefore dealt with, that is, a demand for a jury to be drawn from the box, rather than from the bystanders and the body of the County.

But however all this may be, we have here a case in which there is no suggestion contained in the record that the jury which tried the accused was not an altogether fair and impartial jury, nor is there any material showing that the defendants did not have in this and all other respects, a fair and impartial trial. As heretofore recited, it is also, we think, apparent that he was justly found guilty. Under these circumstances, we are per-

suaded that this is a case which justifies and demands the application of Chapter 32 of the Public Acts of 1911, Code, Section 10654, which provides that no verdict or judgment shall be set aside, or a new trial be granted, for any error in any procedure in the case unless after an examination of the entire record it shall affirmatively appear that the error complained of affected the result of the trial. This statute was given application by Mr. Justice Lansden to a complaint touching the procedure and rulings of the trial Court in the matter of challenges of jurors in the case of *Mahon* v. *State, supra;* and, again, it was given application by Mr. Justice Cook in *Manning* v. *State,* 155 Tenn., 266, 292 S. W., 451, wherein again the question was one of procedure in selecting jurors, etc. In both of these cases, attention was called to the fact that in thus giving effect to the provisions of the Act of 1911, there was no invasion of the constitutional rights of the defendant, since these constitutional rights were not invaded, so long as it appeared that the defendant had had a fair and impartial trial before a fair and impartial jury.

It is true that in *Link* v. *State,* 50 Tenn. (3 Heisk.), 252, the statutory requirement that a list of the jurors be furnished the accused was considered, and it appearing that this and other statutorial procedural rights had been denied the defendant, the Court reversed. So complete had been the disregard of his rights on the trial that the Court might well have concluded that the defendant had not had that fair trial insured by the Constitution. Moreover, this was long before the enactment of 1911, and it is of interest to observe that this Court has applied this Act to at least two other statutory requirements in this same Chapter of the Code treating

of "The Trial and its Incidents." One is Section 11747, dealing with "Challenges," and the other 11749, the "Judge's charge in felonies." The Mahon and Manning cases, cited above, apply the Act to challenges, and Mr. Justice LANSDEN, in *Munson* v. *State*, 141 Tenn., 522, 213 S. W., 916, applied it to violation by the trial Judge of Section 11749, requiring the charge in a felony case to be altogether in writing. We quote from that opinion passages particularly in point here:

"This statute has been construed by this court to be an imperative direction to the courts to reduce to writing every word of their charge to the jury in all felony cases. *Manier* v. *State*, 65 Tenn. (6 Baxt.), [595], 602; *Newman* v. *State*, 65 Tenn. (6 Baxt.), 164; *Huddleston* v. *State*, 60 Tenn. (1 Baxt.), [109], 110; *State* v. *Missio*, 105 Tenn. [218], 219, 58 S. W., 216; *Elijah Duncan* v. *State*, 66 Tenn. (7 Baxt.), 387.

"These cases show that this court has strictly construed the statute, and has required a strict compliance with its terms. But since the foreging cases were decided, the Legislature has enacted chapter 32, Acts of 1911 (Shannon's Code, Sec. 6351a1). This statute forbids a reversal of any case coming to this court for any error in any part of the procedure below unless this court is of opinion, after an examination of the entire record, that the error complained of affected the merits. The statute has been construed in a number of cases, among which are *Harness* v. *State*, 126 Tenn., 365, 149 S. W., 911, *Hamblin* v. *State*, 126 Tenn., 394, 150 S. W., 89, and *Lee* v. *State*, 132 Tenn., 655, 179 S. W., 145, L. R. A., 1916B, 963. It was declared in all those cases, as well as others, that the merits of a criminal case is the guilt or innocence of the accused. Of course, there may be

such violation or disregard of some constitutional right of the accused, not affecting the merits, that would induce the court to order a new trial; but it is difficult to see how one who is guilty of the offense of which he has been convicted can justly complain at errors in procedure which had no direct or remote relation to the judgment rendered against them.''

Counsel rely upon an unreported opinion of this Court in the case, recently decided, of *Middlestrasser* v. *State*. In this memorandum opinion the right of a defendant to a list of the jurors was recognized and enforced, but the record in that case, unlike that before us, affirmatively indicated that errors committed below had probably resulted in a miscarriage of justice in rendering a verdict of a degree which the evidence did not support. It was not intended thereby to hold that this Court would refuse to apply the salutary provisions of Chapter 32, Pub. Acts 1911, in a proper case. It may well be held to be reversible error to refuse such a request when it can be seen from the record that for this and other reasons the defendant does not appear to have had a fair trial before an impartial jury.

In England, the accused was entitled to a list of the jury panel only in cases of treason. There was no requirement under the common law that such a list be furnished unless in cases carrying a penalty of death. And it is only in some of the States of this country that by statute the provision contained in our statute has been made, and it is generally held that in the absence of a statutory provision the defendant has no right to such a list. 16 Corpus Juris, page 803. It can, therefore, be seen that the failure or refusal to furnish a list of the jurors can not be said to be a violation of any recognized

constitutional privilege or right, but that the Constitution extends protection only to the extent of insuring a fair and impartial trial before a fair and impartial jury, as announced by this Court in the cases hereinbefore cited; and see *State* v. *Sexton*, 121 Tenn., 35, 114 S. W., 494. As said by Mr. Justice Cook in *Manning* v. *State*, *supra*, "The question to be considered on appeal is whether or not defendant was denied a fair and impartial trial by a fair and impartial jury as at common law." [155 Tenn., 266, 292 S. W., 455.]

For the reasons indicated, this assignment is overruled, and these errors complained of in the empaneling of the jury will not be made the ground of reversal.

Finally, counsel complain of the refusal of certain special requests alleged to have been tendered at the conclusion of the general charge and of certain alleged errors in the charge, but, as noted by the Attorney-General on his brief, while what purports to be the charge of the trial Judge, together with these requests, has been copied into the transcript, they are not in the bill of exceptions, or in the minutes of the Court, or identified by the endorsement of the Judge, and may not, therefore, be considered by this Court. *Huddleston* v. *State*, 66 Tenn. (7 Baxt.), 55.

It results that the judgment must be affirmed.