LONG *v.* STATE.

(*Nashville*, December Term, 1947.)

Opinion filed July 17, 1948.

140

C. L. BOYD, of Waynesboro, for plaintiff in error.

J. MALCOLM SHULL, Assistant Attorney-General, for the State.

MR. JUSTICE GAILOR delivered the opinion of the Court.

Defendant appeals from conviction of murder in the second degree and punishment by imprisonment of not less than 10 and not more than 19 years and a day in the penitentiary.

The victim of the homicide, May Long, was the second wife of defendant with whom he was living at the time of the murder which occurred sometime before midnight on the 21st day of July, 1946, in the home of the couple in a remote section of Wayne County. Their two children, a boy 5, and a girl, Lorene Long, who was 9 years old when she testified for the State, were the only other occupants of the dwelling at the time the killing occurred.

After visiting a neighbor and drinking heavily during the day, which was Sunday, defendant returned home before dark and was too drunk to feed his stock. At that time he was in a belligerent mood and muttered threats against the neighbor who had been his drinking companion, but offered no physical violence to any member of his family. His married daughter, Laura West, who was a child of defendant's first marriage and stepdaughter of the deceased, was on a visit to her father's home at the time. She realized her father's condition and went out to the barn and fed the stock. When she returned to the house the wife, May Long, and the two children had gone to bed in one of the beds in what is called the living room of the house, and the defendant, fully clothed, was lying on the other bed in the same

room, cursing, muttering and banging the wall with his fist. The defendant started a quarrel with this married daughter and finally ordered her to leave the house. She did not do this immediately but went into an adjoining room out of the presence of the defendant and lay down on a bed with her clothes on. Later, and before the homicide, she slipped out of the house and went to the home of a neighbor, where she spent the night.

Lorene Long, the 9 year old daughter of the defendant, testified for the State that she woke in the night to hear her mother screaming for help; that the defendant was beating her mother with a metal ash pan and later beat her with sticks of stove wood; that this occurred in the room where she (Lorene) was sleeping; that her father tied a rope to her mother's leg and dragged her body out into the yard and later dragged her back into the house; that her mother was dead when he dragged her body back into the house; that her mother was doing nothing to provoke or justify the assault; that the defendant lifted the body from the floor to one of the beds and by whipping her (Lorene) with a rope, forced her to wash up the blood stained floor. She identified broken pieces of wood and a blood stained plow line as articles used in the commission of the crime. Defendant then started to leave the house and when Lorene tried to go with him, he again beat her to make her stay at home with her little brother. Knots and welts on this little girl's body testified to by other witnesses for the State are we think conclusive of the severity and brutality of the beating she received at the hands of her father, although he testified that it was merely a "whipping."

Between one and two o'clock in the morning the defendant turned up at the home of a neighbor, Eaton,

where he told a story that he had returned home between ten and eleven of the previous evening to find his wife's body lying on the floor, that she had been brutally beaten by an unknown assailant and was then, at one or two o'clock in the morning "in a dying condition if not already dead."

Since, on the following day, Monday, defendant confessed the crime to his daughter, Laura West, there is no need to recount further details of this brutal and bloody murder.

The substance of defendant's testimony and his defense is that he was drunk and didn't remember anything that happened. He admits that he whipped Lorene to make her stay at home when he went for help, but in view of the false statement he made to the Eatons about the commission of the crime, and about the severity of the beating administered to the little girl, the jury would have been fully justified in disbelieving his entire testimony. However, they did not, but considered his plea of intoxication sufficient to justify a reduction of the grade of the offense from murder in the first to murder in the second degree.

By the 8th and last assignment of error, defendant complains that the evidence was insufficient to support the conviction. It is difficult to see the ground for this assignment in view of the defendant's voluntary admission of the charge to his married daughter, Laura West. From our statement of the proven facts it is clear that the defendant was guilty as found by the jury, and that the conviction of murder in the first degree with greater punishment was justified by the evidence, in spite of the evidence of defendant's intoxication. Wharton Crim. Law., Vol I, sec. 407, 1932 Ed. Although

the jury found the plea of voluntary intoxication justified by the defendant's testimony, the only legal effect of the finding is to reduce the grade of the offense from first to second degree murder. Clearly, the effect to be given the defense is wholly within the jury's province, based on their finding of the extent of the intoxication under all the proven facts. *Mullendore* v. *State*, 183 Tenn. 53, at page 60, 191 S. W. (2d) 149 and cases there cited.

The other seven assignments of error are directed at alleged error committed during the examination and acceptance of the jury. Before considering the assignments, it is well to recall the well established rule that the defendant's only right is to have a fair trial at the hands of an unprejudiced, unbiased and impartial jury. He has no right to select certain jurors. *Manning* v. *State*, 155 Tenn. 266, 275, 292 S. W. 451. He has only the right to reject talesmen tendered who are biased and prejudiced, as "bias" and "prejudice" have been limited and defined by statute and decision. *Mahon* v. *State*, 127 Tenn. 535, 156 S. W. 458.

By his first assignment, defendant insists that prejudicial and reversible error was committed against him because the Attorney General successfully challenged for cause five talesmen, who in answer to appropriate questions revealed their disbelief in capital punishment.

He insists that this was error because (1) the prosecutor did not ask all prospective jurors questions about their belief in capital punishment, and (2) because the result was to give the State nine peremptory challenges when it was entitled to only six under Code sec. 10020.

As to the first objection, defendant cites no authority, and we are confident that none can be found to

compel the prosecutor to ask all prospective jurors any certain questions. All prospective jurors are presumed to be qualified when they are presented and within legal limitations to be enforced by the Trial Judge, questions asked by the attorneys on the *voir dire* are within the discretion of the attorneys. When the record shows that the jurors were "elected, impaneled, tried and sworn," it is presumed that they were fair and impartial jurors since the Trial Judge has the exclusive right to pass upon the selection of jurors. *Hughes* v. *State,* 126 Tenn. 40, 88, 148 S. W. 543, Ann Cas. 1913D, 1262; *Turner* v. *State,* 28 Tenn. 119; *Isham* v. *State,* 33 Tenn. 111; *McBean* v. *State,* 50 Tenn. 20, 24. So here, the decision of the question whether a prospective juror should or should not be asked about his belief in capital punishment was clearly and exclusively in the Attorney General. Decision that such questions are proper where they are relevant to the indictment has been settled in this State since the opinion in *Ray* v. *State,* 108 Tenn. 282, 289, 67 S. W. 553, and it appears in that case that the question was not asked of all prospective jurors. Indeed, it was one of the grounds of the overruled objection that jurors who had not been asked the question, heard it asked.

As to the second objection, we fail to see how the defendant can complain that the challenge for cause was sustained in those cases where the talesman stated his disbelief in capital punishment. If 50 talesmen had stated their disbelief and been successfully challenged for cause, the result would doubtless have been the same as it would have been if the State had had 56 peremptory challenges, but the defendant would have no right to a reversal when the evidence, as in this case, was so clear that capital punishment was a reasonable result of the

trial. The question is really settled by application of a rule stated in an Alabama case, 'that where one party has a right to a challenge for cause which is not available to the other, the failure of the first party to exercise the right is no ground for objections by the other. *Harrison v. State,* 79 Ala. 29.

█ The second assignment is that the Trial Court improperly overruled defendant's challenge for cause of a talesman, Throgmorton, and so forced the defendant to exhaust one of his peremptory challenges. The talesman said he had heard about the case and formed an opinion but that he knew his duty as a juror, and wouldn't decide on his opinion formed from what he had heard, but would decide on the evidence presented in Court and the law there laid down. The defendant's challenge for cause was properly overruled, *Manning v. State,* 155 Tenn. 266, 292 S. W. 451, but in any event, Throgmorton was challenged peremptorily and did not serve on the jury.

By his third assignment defendant complains that a talesman, Taylor, who was satisfactory to the defendant, was excused on insufficient grounds. The defendant has no right to ''select,'' he has only the right to ''reject.'' 35 C. J., P. 405, sec. 459; 50 C. J. S., Juries, sec. 268, p. 1032. But defendant insists that because he was forced to use a peremptory challenge on talesman Throgmorton, and did not get Taylor because he was erroneously excused, that he was forced because he had exhausted peremptory challenges to accept a 12th juror, one H. H. Prather, who is admitted to have been legally qualified but who for personal reasons, was unsatisfactory to the defendant and defendant's counsel.

██ ██ All the questions presented by the first three assignments of error are resolved by determination

whether or not the 12th juror, Prather, was competent. When Prather was called he was very reluctant to serve, and we think, did all he could to disqualify himself, not because of any prejudice about the case but because he was very anxious to avoid service to return home to look after a vicious and dangerous animal which he thought might do harm to his wife. Under these circumstances, instead of being prejudiced against the defendant and his counsel, his natural feeling was to be favorably disposed to them when they tried to have him excused and failed because the Trial Judge held that the peremptory challenges of the defendant had been exhausted. It is stated in argument that the reason for the defendant's objection to Prather was that he had been a witness for the prosecution in *Forsha* v. *State*, 183 Tenn. 604, 194 S. W. (2d) 463, but the record does not show that this fact was brought to the attention of the Trial Judge or considered by him, so of course, it is beyond our review. Since we think that the verdict shows that no trial juror was prejudiced against defendant, we could not reverse the case even if the peremptory challenge of Prather had been erroneously denied. Code sec. 10654; *Mahon* v. *State*, 127 Tenn. 535, 156 S. W. 458.

In his brief, defendant argues the fourth through the seventh assignments of error together, and we will adopt that course. These assignments all assail the constitutionality of Chapter 12 of the Private Acts of 1911, which is the jury law for Wayne County. The Act provides that "it shall not be cause for challenge of a person drawn or summoned under this Act that he has served on the regular jury within two years . . . "

A talesman, Eunice Brewer, was called and on his *voir dire* it was shown that he had served on a regular jury

within two years. He was challenged for cause by the defendant and when the challenge was disallowed, he was challenged peremptorily.

He was not, therefore, a member of the trial jury. The question of his qualification to serve is immaterial, as is also the question of the constitutionality of the Act, the validity of which would determine his qualification.

So, again, since the defendant was forced to use a peremptory challenge to get rid of Brewer and had none left to get rid of the 12th juror Prather, the determinative question is again whether Prather was legally qualified and we have held that he was.

We have carefully studied this record and are convinced not only that the jury gave the defendant a fair and impartial trial, but that he received generous treatment and liberal mitigation of punishment on account of his plea of drunkenness.

All assignments are overruled and the judgment is affirmed.

All concur.