Vines *v.* State.

(*Knoxville,* September Term, 1949.)

(May Session, 1950.)

Opinion filed June 9, 1950.

Robert L. Denman and Dan Massey, both of Chattanooga, for plaintiff in error.

Nat Tipton, Assistant Attorney General, for the State.

Mr. Chief Justice Neil delivered the opinion of the Court.

The plaintiff in error was indicted by the grand jury of Hamilton County for the crime of assault with intent to commit murder in the first degree. When brought to trial he was convicted and sentenced to 20 years and a day in the State penitentiary.

The errors assigned on this appeal are (1) the evidence preponderates against the verdict and in favor of his innocence, (2) for error in not excluding the testimony of one Odel Patterson on the ground that he had been convicted of robbery in the State of New Jersey, (3) for error by the trial judge in excluding upon his own motion a qualified juror, and (4) for permitting inflammatory remarks by the District Attorney General.

 The weight of the evidence shows that the plaintiff in error committed an assault upon Mrs. Frank Foster, a white woman, by whom he was employed to mow the lawn. Upon finishing his work she was due to pay him $4.12. She handed him $5, not having the exact change, stating that he could account for the difference later on. Immediately upon taking the money he committed a violent assault upon Mrs. Foster striking her in the mouth, knocking her to the floor. When she undertook to get up he drew his knife and threatened to kill her. She grappled with him in an effort to hold his arm and to prevent his using his knife, but to no avail. The cuts upon her body, however, appear to have been more or less superficial. The screams of Mrs. Foster attracted the attention of a neighbor, Mrs. Morrell, and a Negro man, Odel Patterson, who was a sexton at a nearby church. The plaintiff in error denied committing the offense. He admitted mowing the lawn, but insisted he left at once and did not molest Mrs. Foster in any way; that the first he knew of any assault

was when he was arrested at the home of his sister. He had an honorable discharge from the U. S. Navy and had never been in any trouble before. The prosecutrix, Mrs. Foster, and the colored sexton, Odel Patterson, positively identified him as the one who made the assault upon her. The theory of the State was that he assaulted Mrs. Foster for the purpose of stealing her pocket book. We think the weight of the evidence sustains the verdict of the jury.

■ There is no merit in the contention that it was error to admit the testimony of Odel Patterson. When asked if he had been convicted of a crime he answered, "I certainly have. I am ashamed of it. God knows I wasn't guilty. For armed robbery." He stated it occurred in New Jersey "18 years ago". He seems to have served about eight months of a 30 year sentence. The fact that this witness had been convicted of robbery in New Jersey would not render him infamous under the laws of Tennessee. *Burdine* v. *Kennon*, 186 Tenn. 200, 209 S. W. (2d) 9, 2 A. L. R. (2d) 577. The assignment is overruled.

■ The assignments of error which complain of the action of the trial judge in excluding one James Edwards from service on the jury and for permitting inflammatory remarks by the District Attorney General must be sustained. The juror, James Edwards, was a Negro. When he was called around and examined upon his voir dire the State had exhausted all its peremptory challenges. The juror stated he did not know the defendant or Mrs. Foster and had no opinion in the case. The Attorney General challenged him peremptorily. Thereupon the trial judge remarked, "I don't think you have got any left. I think you have exhausted your challenges, Gener-

al." Counsel for defendant, Mr. Denman, "We accept him." The Court: "The Court will excuse him. Excused by the court." The defendant excepted. We think this action of the trial judge was clearly erroneous because it amounted to allowing the State an extra peremptory challenge, the juror being in all respects qualified to serve upon the jury. It was prejudicial to the right of the accused.

 We are not unmindful of the fact that trial courts have a wide discretion in passing upon the qualification of jurors in both civil and criminal cases. In exercising this discretion the presumption is always indulged that the court has but one purpose in mind, which is to assure a fair and impartial trial before an unprejudiced and competent jury. By Code, Section 10012 it is provided that "the court may discharge a grand or petit juror from service who does not possess the requisite qualifications, or who is exempt or disqualified from such service, *or for any other reasonable or proper cause, to be judged of by the court."* (Emphasis supplied.)

The basic requirement for jury service in Tennessee is that a venireman be a householder or freeholder in the county and State and "a good and lawful citizen". No contention is made here that Edwards was disqualified for any cause. If the trial judge could, upon his own motion, and without stating any cause, discharge the juror he could arbitrarily discharge any number of venire-men who are qualified for service and by so doing add to the number of peremptory challenges by the State, in plain violation of law. The repetition and continuation of such a practice would result in an undisguised mockery of our system of jury trial. The defendant was entitled to have the juror in question oc-

cupy a seat in the jury box, and the court's action in excluding him without cause constitutes reversible error.

■ It is next insisted that the District Attorney General, in his argument on behalf of the State, used language that was inflammatory and highly prejudicial to the defendant to all of which timely objection was made. The remarks complained of are as follows:

"General Lively: It's lucky for him and it's lucky for her that he didn't accomplish the purpose that no doubt he had in mind. I say, if that justifies me in saying that, why—

"Mr. Denman: (Interposing) I object to it because there is no proof here—

"General Lively: (Interposing) Let's see if there is proof. She says—

"The Court: (Interposing) Wait a minute. A lawyer has a right to draw a reasonable inference.

"General Lively: Very well. I will let Your Honor rule on it.

"The Court: Go ahead, now.

"General Lively: Thank you."

. . . . . .

"General Lively: Oh, you had the unmitigated gall and audacity, Mr. Denman, to cross examine this little lady and ask her if she wasn't holding hands with this colored man. God pity you, God pity you. I'm ashamed of you, ashamed. Rather than criticize you, I bow my head and say a word of prayer for you and ask the Lord to forgive you, for you know not what you have done. Yes. Was he holding your hand or was you holding his? Such a pity. And a lawyer in the defense of his client will go out of all bounds of propriety and ask such a question of such a sweet little woman on the wit-

ness stand and having to unburden her soul of this awful attack that was committed on her without any justification.

"Give him the five dollars and turn around and bite the hand that fed you, bite the hand that fed him.

"Mr. Denman: May it please the Court, the proof was that I asked her whether she was holding his hand.

"General Lively: That's a question for the Jury to decide."

. . . . . .

"General Lively: Oh, you put a witness on the stand to prove the good character of this Defendant. It was not necessary for the State to put on a witness to testify as to the good character of Mrs. Foster that sits in this room. The flower of men and women, the citizenship of Lookout Mountain, to testify as to the good character of Mrs. Foster, who sits here in your presence. Here they sit. And this human fiend to come up there on Lookout Mountain and take advantage of this little woman left all alone in the home to herself, and put yourself in Mrs. Foster's place, or put your wife in Mrs. Foster's place, or my wife, or my sister. You think twenty-one years is too long? No, I say to you, may it please Your Honor, that there is not a sufficient penalty on the statute books to justify that kind of a crime."

We think the foregoing argument by the State's counsel justifies a reversal of this case. *Watkins* v. *State,* 140 Tenn. 1, 203 S. W. 344. The defendant was not on trial for attempted rape. On the contrary the State had put him to trial upon an indictment charging an assault to commit murder, the theory being that his purpose was robbery. The State's counsel clearly asked the jury to give consideration to the theory of attempted rape, and

not robbery, referring to the defendant as "this human fiend" . . . "taking advantage of this little woman all alone in the home to herself." This violent assault upon the defendant, guilty though he may be, exceeded all bounds of reasonable propriety. The court should have admonished counsel that he had no right to argue a theory that was wholly foreign to the indictment in order to secure a conviction, and that the language used was highly improper. While it is the duty of the State's counsel to prosecute all offenders with the utmost vigor he is never driven to the necessity of indulging in such intemperate language to influence a jury's decision.

The intemperate language used in referring to the defendant's counsel's cross-examination of the prosecutrix was grossly unfair and highly prejudicial. The imputation heaped upon him that he sought to have the jury believe that the prosecutrix was "holding hands" with the defendant, a Negro man, as if it were a petting party at the time of the assault, was wholly unjustified. The refusal of the trial judge to sustain the defendant's objection to the foregoing argument constitutes reversible error.

Reversed and remanded for a new trial.

All concur.