GERALD WILLIAM NELSON AND JOHN E. HATTON

*v.*

STATE OF TENNESSEE

(*Knoxville,* September Term, 1955.)

(May Session, 1956)

Opinion filed July 20, 1956.

HOBART ATKINS, B. REX McGEE AND R. C. SMITH, JR., Knoxville, for plaintiff in error.

NAT TIPTON, Advocate General, for the State.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

These two men were indicted for the violation of Section 10895.1 et seq. of the 1950 Code Supplement, T.C.A. 39-1401 et seq., which sections make it a felony to damage or destroy real or personal property by means of explosives. They were tried jointly by consent on two separate indictments, were found guilty and their sentence was fixed at not more than 3 years upon each indictment, from which they have appealed. A third person, Craig, was indicted and tried as an accessory before the fact but was acquitted by the jury.

The indictments arose out of two occurrences in May, 1955, during a strike of certain employees of the Southern Bell Telephone Company. The defendants were former employees who were on strike. Early on the morning of May 5th two connection boxes located on telephone poles 8 or 9 feet above the ground were dynamited. One of them was on the Asheville Highway in Knox County nearby Chilhowee School. The other was on Johnson Street in the Lonsdale Section of Knoxville. As a result of the first the Telephone Company property and the school property were damaged. As a result of the other explosion the property of the Telephone Company and that of an individual were damaged. The first explosion occurred near the school at about 4:15 a.m. and the second one on Johnson Street at about 5:00 a.m. About 15 minutes thereafter an officer arrived and detected the odor of dynamite in the air. Another witness, Beal, was an employee of a filling station located on the Asheville Highway, about a half mile west of the school building. Shortly before the explosion two men whom he later identified as being the defendants stopped at his station

and bought some gas. They were driving a Chevrolet car. After obtaining the gasoline, they drove east toward Chilhowee School and about 15 minutes later witness heard an explosion. He went out to the highway at once and very shortly thereafter noticed this same automobile, which had stopped at the station a short while before, as it passed him going west at a very high rate of speed. He immediately telephoned a man named Atchley, a friend of his who operated a station still further west, so that the latter might be on the lookout so as to obtain the license number of the car. Atchley went out and when the car passed at a high rate of speed he was only able to obtain the prefix number, which was 33, denoting Roane County.

The county officer, above mentioned, who arrived there shortly after the explosion and smelled the dynamite, saw two men drive up to the scene near the Chilhowee School and they answered the description that had been given him of the men in the automobile. He therefore arrested them, took them to the county jail and notified the District Attorney General. After talking with both of these suspects the Attorney General remanded them to jail with instructions to let no one talk to them.

The authorities then made a searching examination of the Chilhowee School vicinity and it was found that the telephone pole on which the box had been located bore marks of having been climbed recently with linemen's climbing irons, and in one of the holes made by these irons a piece of leather was found. In the automobile which was the property of the defendant Hatton, there was found a hacksaw and a pair of climbing irons. Later on a knife was taken from Nelson. One blade of this knife had some black gummy material on it. On further

examination of the shoes of Hatton this piece of leather seemed to match a torn place in them. He was then required to remove his clothes for examination.

The authorities semed to be pursuing the investigation very rapidly because all this occurred on the same day of the explosion. The above mentioned material, a piece of leather and a hacksaw, Hatton's clothes and Nelson's knife, was sent to the laboratory of the F. B. I., together with some wood from the pole on which this box was located. Later that day a piece of fuse found at the scene of this explosion was also sent to the F.B.I.

The tests made by the F. B. I. disclosed that this piece of leather had come from Hatton's shoes, that in his trousers were found slivers of wood of the same composition as the telephone pole on which the box was located and that the knife and hacksaw blade both contained fragments of fuse of the same type as that found at the scene.

In the afternoon of the same day the Attorney General confronted Nelson with the above mentioned evidence and about 3:45 p.m. Nelson signed a confession in which he admitted his guilt. The next morning about 9:00 o'clock when Hatton was confronted with the evidence of guilt and with Nelson's confession he confessed to his part in the transaction. As a part of Hatton's confession he disclosed that he had hidden some fuse and dynamite near another school in Knoxville, and thereafter the officers with Hatton's assistance found this material at that location.

Neither defendant took the stand to testify before the jury, contenting themselves only with testifying before

the judge in resisting the admissibility of the confessions.

The defendants have filed several assignments of error, but they have argued only two propositions as a ground for reversal. One of these grounds involves the construction of our case of *Wynn v. State,* 181 Tenn. 325, 181 S.W.2d 332, and counsel presents the question in this form: "After the trial court has conducted a preliminary hearing in the absence of the jury upon the admissibility of a confession, and has ruled that such confession is admissible, can the same evidence and all other circumstances relating to the procuring of the confession be introduced before the jury to aid the jury in their determination of the weight to be given the confession?"

It appears that the court and counsel were in agreement that the only thing that the jury can consider is whether or not the accused made the confession and, if so, whether it is true, that is, stated another way, the question of admissibility is a question for the court alone to decide preliminarily, and that having held that the same was admissible because voluntary, it then remained for the jury to determine its weight and credibility. However, the court was of the opinion, and so ruled, that, since under the rule in Tennessee the question of voluntariness is for the court alone, none of the evidence given on the preliminary examination before the judge relating to hope or fear, or promise or threat is admissible before the jury.

■■ With deference to the above trial judge we believe that he was in error in this ruling. In *Wynn v. State, supra,* it will be noticed that after the judge had heard the evidence and ruled that the confession was voluntary and therefore admissible the opinion states that the accused parties then testified before the jury that they

were abused and mistreated by the officers, which the officers testified in denial of such accusation.

In *Steele v. State,* 189 Tenn. 424, 431, 225 S.W.2d 260, 263, this Court said:

"The next complaint is that the trial court was in error in not permitting the jury to hear all the witnesses with reference to the circumstances under which the confessions were made. The trial court followed the approved procedure in this State and conducted a preliminary hearing at which both the prosecution and the defendants were allowed to present evidence with reference to the admissibility of the confessions. The trial judge held the confessions admissible, and thereupon the testimony of the witnesses as to such confessions was heard in the presence of the jury. Counsel for the defendants made no effort to cross-examine the witnesses with reference to the circumstances under which the confessions were made, and if counsel desired at that time to lay before the jury such circumstances, it was their duty to develop them by cross-examination of the witnesses, and the trial judge will not be placed in error merely because of his own volition he did not undertake the examination of such witnesses to develop such circumstances."

Then in *Taylor v. State,* 191 Tenn. 670, 679, 235 S.W. 2d 818, 822, the Court said:

"Contention is further made that Taylor was under duress because he was not allowed to call his lawyer; that he was told 'he didn't need a lawyer' and that 'a lawyer would not do him any good' etc. This however was expressly denied by those present and presented an issue of fact for the court in deciding the admissibility of the confession, and also the weight to be given

the confession by the jury as to its truth or falsity. * * *,,

Thereafter followed the type of examination with reference to duress as is alleged in part in this case.

The question is fully annotated in 170 A.L.R. 567, and the editorial comment on page 570 is in accord with the view above expressed.

Whether or not this ruling of the court presents a reversible error, however, is quite a different question. After the court had ruled that the defense could not show any evidence of inducements by hope or fear or force, etc., he stated: ''But as I say you are entitled to go on and ask questions about the manner in which it is obtained and how it was obtained, but whenever that question requires an answer that goes to the point of force or threats or promises or hope of reward or immunity or anything like that, it is a matter not competent for the jury to hear and I will sustain the objection.''

Subsequent to this ruling and upon the State resting its case counsel for the defendants did not offer any evidence along this line at all with reference to the circumstances but contented himself with a number of character witnesses' testimony.

Therefore the failure of counsel to preserve the evidence that he intended to offer before the jury leaves us where we are unable to say whether the rulings of the judge on any objections by the State would have been prejudicial or not. A great deal of testimony by the two defendants and by some of their relatives appears in the transcript of the preliminary hearing which was had before the court on the question of the admissibility of the statements, and certainly not all of it could be incom-

petent on any basis. We do not know whether counsel for defendants would have offered all of the same testimony or parts of it or what part. Nor do we know what objections would have been made by the State, nor what rulings would have been made by the trial judge as to any part to which objection was made by the State.

The burden rests upon the plaintiffs in error to show that the erroneous ruling of the court was prejudicial. This has not been done for the reasons above stated and we therefore must overrule the assignments based on this proposition.

The second error that is briefed and argued is embodied in the question as stated by the counsel for defendants as follows: "Does mere membership in a labor union, where no bias or projudice is shown, constitute sufficient grounds to sustain a challenge for cause by the State against prospective jurors in the trial of an individual for a crime growing out of a labor dispute?"

The court sustained a challenge for cause by the State against fourteen prospective jurors upon the ground that they were or had been members of labor unions. In doing so the court stated: "It is my opinion that if a person, a member of a union which in event of a strike would require them, that is, presently a member of a union, not formerly but presently, which would require them to go out on a similar strike, I think are disqualified, and if you ask for a challenge on that reason the challange will be sustained."

Further the court said: "If he is an active member of an affiliated union as I understand, then he has an interest in the case and is not a qualified juror. That is what I have been holding and still hold."

Then the defense counsel inquired:

"Mr. Smith: Is that a member of any union? The Court: Yes, sir, any union, hodcarriers or whatever."

■ We think the court's ruling was too broad. The subject is rather fully covered in 50 C.J.S., Juries, sec. 229, p. 976, wherein it is said:

"The fact that a person is a member of a particular order, association, or other organization does not, as a general rule, of itself render such person incompetent as a juror."

This is the rule applied in the case of all sorts of organizations such as Ku Klux Klan, labor unions, religious organizations, churches or fraternal orders. Among the late cases cited in the supplementary notes of C. J. S. are the cases of *Johnson v. State,* 36 Ala. App. 203, 54 So.2d 84; *State v. Musser,* Utah, 175, P.2d 724, 333 U.S. 95, 68 S.Ct. 397, 92 L.Ed. 562; and *Sorrentino v. State,* 214 Ark. 115, 214 S.W.2d 517; *American Creosote Works of La. v. Harp,* 215 Miss. 5, 60 So.2d 514, 35 A.L.R. 2d 603; *State v. Greer,* W.Va., 42 S.E.2d 719.

Counsel cites specifically also a case involving a labor union, *Alabama Fuel & Iron Co. v. Powaski,* 232 Ala. 66, 166 So. 782.

■ Since none of these prospective jurors who were challenged were either present or former employees of the telephone company, nor were they connected with it nor were they members of the union to which the telephone employees belong and since no bias or prejudice was claimed as to any of them, it was error to sustain the challenge for cause.

The State was granted 24 peremptory challenges, as provided by the statute. It used 13 of same so that with

the 14 that were erroneously allowed for cause the State was in effect allowed 3 additional peremptory challenges.

Counsel cites *Vines v. State,* 190 Tenn. 644, 647, 231 S.W.2d 332, for the proposition that the allowance of even 1 additional peremptory challenge by the State is necessarily prejudicial as a matter of law.

We think the facts of that case present an entirely different picture from what we have in the instant case. In the Vines case it was perfectly apparent that the accused did not have a fair trial for several reasons. One was that the accused was a Negro man who was charged with an assault to commit murder on the person of a white woman, whereas the argument of the counsel for the State interjected into the case the theory of attempted rape; secondly the remarks of the Attorney General were highly inflammatory and prejudicial to the defendant; third the qualified juror excluded by the allowance of the extra peremptory challenge was a man of the same race as the accused.

In the instant case we have an entirely different situation. There is no question raised anywhere in the record that the jury that tried these men was not composed of fair and impartial jurors. Not a suggestion of a complaint is made anywhere in the record in that regard. Secondly, by the prompt and speedy action of the law enforcement officers these two defendants were apprehended very shortly after the commission of the offense, very convincing circumstantial evidence with the assistance of the F.B.I. independent of the confessions was obtained against them, each one admitted that they were together on the night and early morning of the occurrence of these explosions when they made their original statements to the Attorney General in

which they denied all knowledge or participation in the occurrences, as a result of all of which it can readily be seen that they were not prejudiced by either one of the above errors on the part of the court in its rulings.

This Court throughout its rulings ever since the enactment of the harmless error statute in the year 1911, Section 10654 of the 1932 Code, has held that it must affirmatively appear from an examination of the entire record that any errors committed in the trial court prejudicially affected the verdict.

In *Mahon v. State,* 127 Tenn. 535, 156 S.W. 458, it was held that where the guilt of the defendant was evident a judgment would not be reversed because the trial court erroneously held the jurors competent, it appearing that the parties were tried by a fair and impartial jury.

In *Manning v. State,* 155 Tenn. 266, 292 S.W. 451, 455, it was said: ''The question to be considered on appeal is whether or not defendant was denied a fair and impartial trial by a fair and impartial jury as at common law''. In this case it appears that such was the case.

In *Cooley v. State,* 174 Tenn. 168, 124 S.W.2d 250, the defendant's request prior to the selection of a jury for a list of the prospective jurors, a right to which he was entitled by statute, was denied him. It was held that having had a fair and impartial trial, he could not complain of this error.

The same thing is repeated in *Long v. State,* 187 Tenn. 139, 213 S.W.2d 37.

In *England v. State,* 196 Tenn. 186, 264 S.W.2d 815, where a juror who had previously been challenged peremptorily was accepted without discovering his prior disqualification, the Court held there was no error that

would justify reversal because he had a fair and impartial trial within the meaning of the statute.

■ In addition to the circumstantial evidence above referred to we think the confessions were properly admitted in evidence by the trial judge, that they received a fair and impartial trial, and that the record shows guilt beyond a reasonable doubt. The errors occurring do not affirmatively appear to have prejudiced the defendants, and, therefore, within the spirit of the Act of 1911, the case will not be reversed because of them. Said Act was necessitated by the frequent reversals for numerous errors because the State could with difficulty show that errors were not prejudicial—that is, prove a negative—and thus the expense of the courts was greatly increased by repeated new trials.

The judgment below is affirmed.