**STATE of Tennessee, Petitioner,**

v.

**James Gerald WINGARD, Respondent.**

Supreme Court of Tennessee.

Feb. 22, 1972.

Rehearing Denied June 5, 1972.

David M. Pack, Atty. Gen., Lance D. Evans, Asst. Atty. Gen., State of Tenn., Thomas Shriver, Dist. Atty. Gen., Tenth Judicial Circuit, Carlton Petway, Asst. Dist. Atty., Nashville, for petitioner.

Robert N. Skinner, Paul W. Couch, Nashville, for respondent; Philip M. Carden, Nashville, of counsel.

## OPINION

DYER, Chief Justice.

James Gerald Wingard was convicted by a jury in Davidson County of murder in the first degree and sentenced to serve ninety-nine years in the State Penitentiary. Upon appeal the Court of Criminal Appeals has reversed and remanded for a new trial. We granted certiorari.

Wingard was jointly indicted with four other defendants, namely: Pleasant, Williamson, Butler and Dillard. When the case was called for trial the State moved for a severance as to the defendants Pleasant and Williamson, which motion was granted. The record is silent as to any particular reason for the severance except the severed defendants noted they did not object. After this severance the case proceeded against the remaining three defendants by the selection of the jury in the following manner:

The trial judge would call a group of prospective jurors into the courtroom and by interrogation he would determine if any of them had any basic disqualifications preventing them from serving on this jury. Upon such determination the trial judge excused the jurors from the courtroom and then each was individually recalled to the stand, sworn and interrogated by the State and the counsel for each of the three defendants. When a juror had been accepted by all parties he was excused and separated from all other prospective jurors.

On the third day of this jury selection when ten jurors had been tentatively selected and accepted by all parties, counsel for Butler and Dillard filed a joint motion requesting a severance on the ground Wingard's personal conduct and the conduct of counsel for Wingard in the selection of the jury was prejudicial to these two defendants. The State opposed this motion. The trial judge sustained the motion granting the severance. It does not appear Wingard opposed this motion for severance, but after such was granted he moved for a mistrial, which was overruled.

At the time of the severance of Butler and Dillard the State had exercised nine of its peremptory challenges, but had not attributed any of them to any particular one

of the three defendants. The record does not indicate at the time the State used any of its peremptory challenges a request was made by any of the three defendants to have the State indicate as to which defendant the challenge was being exercised. In this situation the trial judge attributed three of the State's peremptory challenges to each of the three defendants for the total of nine. Under this allocation the State in the trial of Wingard alone still had three peremptory challenges it could exercise and in completion of the selection of the jury the State exercised one of these three for a total of ten.

The Court of Criminal Appeals, by majority opinion, held as follows:

We believe, under the facts and circumstances of this case, that when the trial judge found it necessary to grant the severance as to Butler and Dillard that he should have granted Wingard's motion for a mistrial, and that it was error for him not to do so and to allow the State additional peremptory challenges, and we cannot say that the error was harmless.

We sustain the assignments of error going to the State's use of an excessive number of peremptory challenges, and the trial court's failure to declare a mistrial after granting the severance to the last two co-defendants.

In a capital case with three defendants, pursuant to T.C.A. § 40-2510, the State was entitled to six peremptory challenges for each defendant for a total of eighteen. As we have noted under the circumstances as they developed in the selection of the jury only one of these defendants was placed in jeopardy and the State, in fact, did exercise four more peremptory challenges then allowed for one defendant. The question for decision is whether such is reversible error.

Prior to the enactment in 1911 of our Harmless Error Statute, now T.C.A. § 27-117, this Court had adhered to the rule the

allowance to the State of any number of peremptory challenges greater than the statutory number allowed constituted reversible error per se. This rule was adhered to in such cases as Wiggins v. State, 69 Tenn. 738 (1878), and Foutch v. State, 100 Tenn. 334, 45 S.W. 678 (1898).

After the enactment of our Harmless Error Statute this Court decided the case of Nelson v. State, 200 Tenn. 462, 292 S. W.2d 727 (1956); certiorari denied 355 U.S. 271, 78 S.Ct. 327, 2 L.Ed.2d 257. The *Nelson* case involved two defendants and the State by statute was allowed twenty-four peremptory challenges, which, in the course of the selection of the jury, exercised thirteen of these challenges. Upon appeal this Court held the trial judge was in error in excusing for cause at the insistence of the State fourteen prospective jurors. The result of this holding had the effect of allowing the State twenty-seven peremptory challenges, or three more than allowed by the statute.

This presented the issue of whether or not, in view of the entire record, this error of allowing the State additional peremptory challenges beyond the number allowed by statute affirmatively affected the results of the trial and prejudiced the defendants. The Court, upon examination of the entire record, found this error did not affect the results and pursuant to the Harmless Error Statute affirmed the conviction. This judgment was made by this Court under the following facts reflected by the record: First, the record did not reflect the defendants were tried by any other than a jury composed of fair and impartial jurors; and, second, the record reflected guilt beyond a reasonable doubt. This holding in *Nelson* was a modification of the rule announced in Wiggins v. State, *supra* and Foutch v. State, *supra*.

The same modification of the rule on this issue has taken place in a number of other jurisdictions. In 95 A.L.R.2d 962(b) we find the following statement:

In Criminal cases, commencing in 1837 and continuing for a period of almost a

century, the decisions were uniform in holding that the exercise of an excessive number of challenges by the state, albeit only one, constituted reversible error per se, and it was not until 1929 that a dichotomy of authority arose, and the view that the error was harmless in the absence of a showing of actual prejudice was introduced.

We are of the opinion under this record any error in the allowance to the State of additional peremptory challenges above the statutory amount was harmless error for the following reasons:

First, this trial lasted four days with all of the first two and most of the third day taken up with voir dire examination of prospective jurors. The transcript contains 735 typed pages with approximately 600 of them reflecting the voir dire examination. The defendant Wingard did not offer any evidence and the evidence offered by the State is reflected by 80 pages of the transcript. The other pages of the transcript contain the argument of counsel and the charge of the Court. These facts show the trial judge was very patient with all the parties, including the defendant Wingard, in allowing counsel a full opportunity of selecting a fair and impartial jury. Secondly, there is nothing in the record to indicate the jurors selected were other than fair and impartial jurors. Thirdly, when the jury was selected and sworn, the defendant Wingard had not exhausted all of his peremptory challenges. From this fact no conclusion could be drawn other than that the jurors selected were acceptable to the defendant Wingard. Fourthly, the proof of guilt can only be described by saying it is overwhelming. Unimpeached eyewitnesses testified the defendant Wingard accosted the deceased as deceased was about to enter his own yard and just simply shot deceased, causing his death. The record reflects there was no motive except defendant Wingard wanted to kill someone. Under the evidence offered by the State (only a portion of which is mentioned in this opinion) a fair and impartial jury could arrive at no verdict other than one of guilt.

The majority opinion of the Court of Criminal Appeals cited the case of Vines v. State, 190 Tenn. 644, 231 S.W.2d 332 (1950), and noting this case was decided after enactment of our Harmless Error Statute stated: "We admit to some difficulty in trying to apply the law of Vines and Nelson to the facts of this case." The *Vines* case was also cited in the *Nelson* case and the late Mr. Justice Swepston, writing the *Nelson* opinion for the Court, details the factual difference between the *Vines* case and the *Nelson* case. On the issue here of allowing the State additional peremptory challenges beyond the statutory amount, there is no conflict between the *Vines* case and the *Nelson* case. In the *Vines* case this Court, after examining the entire record, reached the conclusion the allowance of an additional peremptory challenge to the State under all the circumstances reflected by the record did affirmatively affect the result to the prejudice of the defendant, while in the *Nelson* case, applying the same rule to circumstances reflected by the *Nelson* record, reached the opposite conclusion.

We, as did the Court of Criminal Appeals, have considered all other assignments of error and find them without merit.

The judgment of the Court of Criminal Appeals is reversed and the judgment of the trial court affirmed.

CHATTIN, CRESON, HUMPHREYS, and McCANLESS, JJ., concur.