STATE of Tennessee, Appellee,

v.

Early Howard MASON, Appellant.

Court of Criminal Appeals of Tennessee, Nashville.

July 8, 1981.

Permission to Appeal Denied by Supreme Court Oct. 13, 1981.

William M. Leech, Jr., Atty. Gen., James A. DeLanis, Asst. Atty. Gen., Nashville, Robert H. Gay, Dist. Atty. Gen., Lawrenceburg, for appellee.

Jack B. Henry, Joe W. Henry, Jr., Pulaski, for appellant.

## OPINION

O'BRIEN, Judge.

Defendant was found guilty in the Criminal Court for Giles County of first degree criminal sexual conduct and sentenced to serve twenty (20) years confinement in the State Penitentiary. He appeals from that judgment raising several issues for review by the first of which he contests the sufficiency of the evidence and proclaims the State failed to carry its burden of disproving his alibi defense.

 It is not disputed that sometime between 11:30 p. m. and midnight on January 5, 1979, the victim in this case was sexually assaulted. The police were called and she was able to give a sufficient description of her assailant to enable the officers to recog-

nize defendant. At a line-up, ten days after the attack, she identified defendant although she stated he seemed heavier than she remembered. It was subsequently determined that in his line-up appearance defendant was wearing three or four shirts, an undershirt, and three pair of pants. The victim's description of defendant's clothing included an army jacket with an insignia on the sleeve. The proof showed that he had been in the military, had attained the rank of specialist, and worn an insignia similar to that described by the victim. A package of cigarettes dropped by the rapist had been opened in a distinctive fashion. It was developed that defendant smoked the same brand of cigarettes and opened the package in the same manner. There were some conflicts in the evidence about whether he did or did not have a mustache at the time the offense occurred, and at the line-up. Defendant denied owning a jacket of the type described by the victim however there was some disputed evidence that his mother had burned an army jacket of one type or another. An officer testified that Mrs. Mason had told him she had burned her son's army jacket. She testified in court that she had burned one of a different type because it was unfit to wear. In a statement made to the police the defendant declared he had never stopped in the area of the victim's home. The tenant in another apartment in the same house testified defendant came to his door just a few nights before the assault at about the same hour of the night. This witness was acquainted with defendant and had attended school with him. We are satisfied that the evidence in this case was sufficient to support the findings by the jury of guilt beyond a reasonable doubt. T.R.A.P. No. 13(e). In *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the United States Supreme Court stated the test to be as follows:

"... the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson v. Louisiana*, 406 U.S. 356, 362, 92 S.Ct. 1620 [1624], 33 L.Ed.2d 152. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basis facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law."

■ Defendant raised an alibi defense through the testimony of several friends with whom he purportedly spent the hours when the offense occurred. The testimony of these witnesses did not preclude the possibility that Mason could have been in the victim's home at the hour, and for the length of time it took to commit the offense.

Defendant questions on constitutional grounds his identification by the victim at a line-up and her in-court identification of him.

■ Counsel earnestly and zealously argues that the line-up procedure employed was unnecessarily suggestive. We disagree, although we are of the opinion that defendant has waived the right to object to the line-up identification. Tennessee Rule of Criminal Procedure No. 12(b)(3) specifically requires a motion to suppress evidence must be raised prior to trial unless there is good cause to defer it. See *Bolton v. State*, 591 S.W.2d 446 (Tenn.Cr.App.1979). The issue is also waived by failure to register a contemporaneous objection at trial. There is no constitutional requirement of counsel at a pre-indictment line-up proceeding. See *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *State v. Jefferson*, 529 S.W.2d 674 (Tenn.1975). Counsel's contention that the exhibits showing the participants in the line-up in which defendant was identified evidence an improper identification procedure is without merit.

A claim is presented that a member of the jury was subsequently discovered to be a member of the Ku Klux Klan. Because this case charges a black man with the rape of a white woman it is said the juror's failure to divulge his Klan association on voir dire was prejudicial error. It is further asserted that the trial judge unduly restricted examination of this juror at the hearing of the motion for new trial.

On voir dire this prospective juror was asked on behalf of the State if there was any reason why he would have any prejudice or sympathy in the case. He responded in the negative. He was accepted as a juror in defendant's trial and participated in the deliberations resulting in the verdict against him. During the voir dire in a subsequent trial he was specifically asked and replied that he had at one time previously been a member of the Ku Klux Klan. After an extensive examination on this issue the man was found to be acceptable as a juror in the second case. He was ultimately challenged peremptorily by the defendant. This juror, as well as another, was called as a witness at the hearing on the motion for new trial in this case. He vehemently denied any prejudice, or that his verdict was influenced by his past associations, by his religious affiliations, or in any manner, by anything except the evidence in the case. The other juror, a lady, corroborated this evidence and stated that Mr. Johnson did not attempt to, nor did he influence the verdict of the jury in any manner. Defendant relies on the ruling in *Hyatt v. State*, 430 S.W.2d 129, 221 Tenn. 644 (1967) to the effect that the constitutional guarantee of trial by an impartial jury requires they be free of even a reasonable suspicion of bias and prejudice. The court in that case held that the record supported a finding that one of the jurors was at least hostile to the defendant. There is absolutely no evidence of such in the case sub judice. Although stated in a somewhat different context we think the rule set forth in *Nelson v. State*, 292 S.W.2d 727, 200 Tenn. 462 (1956) is applicable under the facts of this case. There the court said:

" . . . The subject is rather fully covered in 50 C.J.S., Juries, § 229, p. 976, wherein it is said:

'The fact that a person is a member of a particular order, association, or other organization does not, as a general rule, of itself render such person incompetent as a juror.'

This is the rule applied in the case of all sorts of organizations such as Ku Klux Klan, labor unions, religious organizations, churches or fraternal orders. . . ."

Defendant's complaint that he was unduly restricted in the examination of the juror at the hearing on the motion for new trial must also be overruled. The trial judge allowed extreme latitude in cross-examination and only inhibited defense counsel when he strayed far afield. The juror testified that a number of years before he had been a member of the Ku Klux Klan. He adamantly denied that this had any influence on his judgment in the case. This was corroborated by the testimony of another juror who was called as a witness. There was absolutely no indication of prejudice by virtue of the fact that this individual had participated as a juror in the case. The trial judge found as a fact that there was no evidence that the juror's prior affiliation with the Ku Klux Klan affected his verdict in any fashion, or that he endeavored in any way to influence the vote of another juror in the course of their deliberations. We concur in the findings of the trial judge.

The judgment is affirmed.

DAUGHTREY, J., concurs in result.

SCOTT, J., concurs.